2000 OK CIV APP 46

Sheree Powell HENDERSON,
Plaintiff/Appellee,

v.

STATE of Oklahoma, ex rel., the BOARD
OF REVIEW FOR the OKLAHOMA
EMPLOYMENT SECURITY COMMIS-
SION, the Oklahome Employment Secu-
rity Commission, and the United States
of America ex rel. United States Depart-
ment of Labor, Defendants/Appellants.

No. 91,830.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Sept. 7, 1999.

Rehearing Denied Jan. 24, 2000.

Certiorari Denied March 28, 2000.

Margaret R. Dawkins, Oklahoma Employment Security Commission, Oklahoma City, Oklahoma for Appellants.

Robert H. Tips, Tips & Gibson, Tulsa, Oklahoma, for Appellee.

*OPINION*

RAPP, J.

¶ 1 The trial court defendant, State of Oklahoma ("State"), appeals the decision of the trial court in favor of the trial court plaintiff, Sheree Powell Henderson ("Henderson") which reversed a decision by the Board of Review ("Board") for the Oklahoma Employment Security Commission ("Commission") that denied Henderson certain employment training benefits.

## I. *Background*

¶ 2 Henderson worked for an oil company and lost her job. She desired to obtain additional education and training. There were Federal programs, administered in whole or in part by the Commission, which were potential sources of benefits to Henderson. She successfully applied for benefits in 1989 under one of these programs, the Federal Job Training Partnership Act ("JTPA"). Henderson received two years tuition benefits in Tulsa University under JTPA. She entered the University and completed four years of education from August 1989 to May 1993.[1]

¶ 3 She then sought additional assistance under a separate Federal program authorized under the Trade Act of 1974, 19 U.S.C. §§ 2101 et seq., to help her pay for the last two years of her education. This Act authorized benefits, under a program named Trade Adjustment Assistance, for eligible employees. A worker's eligibility followed from a determination by the United States Department of Labor ("Labor") that the workers of a company have been displaced because of increased imports.

¶ 4 When Henderson first sought JTPA unemployment assistance in 1989, Labor had not yet made that determination of eligibility

for her Company's employees. According to the Commission's hearing record, Henderson understood that she could not apply in 1989 for the Trade Act assistance and in fact did not do so. The reason was that Labor had yet to make the certification of Company employee eligibility.

¶ 5 Henderson and other of her co-workers then petitioned Labor, pursuant to 19 U.S.C. § 2271(a), for a determination of eligibility, but Labor declined to make the certification. The petition is part of the record for review and it states that it is a petition under Section 221(a) of the Trade Act of 1974. Section 221(a) is the same as 19 U.S.C. § 2271(a).

¶ 6 Henderson and the other employees appealed Labor's decision to the United States Court of International Trade. That tribunal, by written Opinion, reversed Labor's decision and then entered the following order in February, 1993:

> ORDERED that the Secretary of the United States Department of Labor shall certify plaintiff as eligible to receive trade adjustment assistance.[2]

Then Labor entered a ruling as follows:

> All workers of . . . are eligible to apply for adjustment assistance under the Section 223 of the Trade Act of 1974.

¶ 7 As a result of that ruling, Henderson came within the classification of workers eligible to apply for assistance under the Trade Act. Henderson was officially notified on March 5, 1993, by Commission of her eligibility to apply for benefits under the Trade Act. She applied, but the Commission denied benefits.

¶ 8 The Commission gave two reasons for the denial. First, Henderson's attendance at the University extended beyond the maximum 104 week eligibility period allowed under the governing regulation and she had already received 104 weeks under JTPA. Second, training costs, here the tuition she paid separately from JTPA, was not subject to reimbursement under the regulations.

¶ 9 Henderson unsuccessfully exhausted her administrative remedies and appealed to

---

1. One course remained to be completed to be accorded graduate status in the May 1993 class.

2. The named "Plaintiff" in that appeal was "Former Employees of Hawkins Oil and Gas, Inc."

the District Court. Henderson there advanced two arguments.[3] She first maintained that the United States Court of International Trade judgment in fact granted her the Trade Act assistance. Second, she argued that even though the regulations did not authorize retroactive reimbursement the regulations did allow reimbursement for training costs incurred after a denial decision whenever that decision was subsequently reversed, as it was asserted to have been done by the United States Court of International Trade. She claimed that the proceeding before Labor for an eligibility determination qualified under the regulations as a denial of an application for benefits that was reversed.

¶ 10 The District Court agreed with Henderson and reversed. The District Court's judgment rests upon two grounds.

¶ 11 First, the District Court interpreted the decision of the United States Court of International Trade to be a decision which entitled Henderson to 104 weeks of training under the Trade Assistance Act which, in turn, would have covered her last two years of college expenses. As a result of that interpretation, the District Court found that there was a "decision reversing a determination denying approval of training" and, therefore, Henderson's case fell within the exception to the retroactive reimbursements rule.

¶ 12 Second, the District Court found that the Commission did not even need to approve Henderson for the Trade Act assistance. The reason for this finding was again the interpretation placed upon the decision of The United States Court of International Trade to be a ruling that effectively awarded her Trade Act assistance.

¶ 13 Henderson was awarded a money judgment, plus interest and costs, in the amount she requested for tuition expense reimbursement. The State appeals.

## II. Standard of Review

¶ 14 The standard of review is governed by 40 O.S.1991, § 2–610. Facts, if supported by evidence, shall be conclusive and the jurisdiction of the court is confined to questions of law. The findings, decisions, and orders of an administrative body are presumptively correct and valid absent competent evidence to the contrary. A court of review may not substitute its judgment for that of an agency, especially when the agency is acting in its own area of expertise. *R & R Engineering Co. v. Oklahoma Employment Security Commission*, 1987 OK 36, ¶¶ 7–8, 737 P.2d 118, 119. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, n. 1.

## III. Analysis and Review

¶ 15 The Trade Act of 1974, 19 U.S.C. §§ 2101 et seq., establishes a program of benefits for workers whose jobs are adversely affected or eliminated as a result of the effect of imports on their employer. A two-step process precedes disbursement of assistance to a worker and each step is governed by separate regulations.

¶ 16 The first step ("Step 1") requires a certification of eligibility by the United States Department of Labor. This certification begins with a petition for "certification of eligibility to apply" filed by the Secretary of Labor, a group of workers, or the workers' Union or authorized representative. 19 U.S.C. §§ 2271–74; 29 C.F.R. Part 90. This process involves an investigation and determination by the Secretary of Labor as to whether the petitioners' jobs have been adversely affected by imports. 19 U.S.C. §§ 2272–73. If the Secretary finds such adverse effects then the Secretary "shall issue a certificate of eligibility to apply for assistance."

¶ 17 The second step ("Step 2") involves the specific worker application for Trade Act benefits. Payment of Trade Act assistance benefits shall be "made to an adversely af-

---

**3.** Henderson also maintained that she was seeking a separate 104 weeks from that paid by JTPA, that is, the second two years of her university education. In view of the decision reached here it is unnecessary to decide this point. However,

19 U.S.C. § 2292(c) appears to preclude payment of benefits under both JTPA and Trade Assistance Act by reducing the Trade Assistance benefits by payments under other programs.

fected worker who files an application for such allowance." 19 U.S.C. § 2291(a). This step is governed by a separate set of regulations, 20 C.F.R. Part 617. Applications are filed after the Part 90 certification or while a Part 90 certification is pending. 20 C.F.R. § 617.10(a) & (b). A basic qualification for entitlement to benefits is a certification. 19 U.S.C. § 2291(a); 20 C.F.R. § 617.11(a)(1)(i). Moreover, Part 617 prohibits retroactive payments except for cases when a decision to deny payment is reversed. 20 C.F.R. § 617.22(c).

### A. *Exception To Retroactive Reimbursements*

■ ¶ 18 The parties agree that the governing regulations bar reimbursement for training costs incurred before approval for the training "except in the case of a redetermination or decision reversing a determination denying approval of training" under the regulations. 20 C.F.R. § 617.22. Thus, the threshold issue here, which is a question of fact, is to determine whether and when Henderson applied for Trade Act assistance.

¶ 19 Here it is undisputed that Henderson applied in March of 1993 for the assistance and that this application came after she had incurred the costs for her education. The critical question, however, is whether she had applied in 1989, and had been denied, although at that time she did receive the JTPA. The record does not contain an application for Trade Act assistance from 1989.

¶ 20 In the administrative hearing before the Commission, representatives of the Commission testified that there had not been an initial determination of denial in 1989 which could be reversed because no application for assistance had been made at that time. In short, a Petition for Certification of Eligibility to Apply had not been filed as of 1989 and there had not been a prerequisite determination of eligibility by Labor, that is that the employees' jobs were affected because of the effect of imports on the employer.

¶ 21 Henderson, in her testimony, agreed that the type of initial application she made was for JTPA assistance. Moreover, she agreed that the application in 1989 would not be considered for Trade Act assistance and that the funds which provided assistance under that Act were entirely distinct from funds available for the JTPA that she received.

¶ 22 The record shows that Step 2, that is an application for assistance after certification of eligibility, was not undertaken as a matter of fact. Therefore, there was no application for assistance which was denied, and which denial was reversed, that could be the subject of the exception to the retroactive reimbursement prohibition.

¶ 23 Henderson, and her co-workers, filed a petition under Part 90 (Step 1), which is the beginning of the Step 1 process. The United States Department of Labor denied the petition multiple times but the United States Court of International Trade reversed that decision. Here, the Opinion of the United States Court of International Trade clearly shows that the matter under consideration was Labor's refusal to make the threshold certification under the Step 1 process. That Court rendered an Opinion in which it discussed the merits of the Department's denial in light of its duties when a petition is filed under Part 90 (Step 1). The Court entered its judgment which provided in part:

> ORDERED that the Secretary of the United States Department of Labor shall certify plaintiff as eligible to receive trade adjustment assistance.[4]

¶ 24 The record further reflects that Henderson did not file an application for Trade Act benefits (Step 2) under Part 617 either before Step 1 was initiated or while the petition was being processed at the Department or on appeal. Henderson initiated her Step 2 application in March 1993 which was after the Step 1 process resulted in a certification of eligibility to apply. Therefore, she was not entitled to the relief of the

---

4. As previously noted, the "Plaintiff" in the caption was the "Former Employees of Hawkins Oil And Gas, Inc." and Henderson was one of the plaintiff petitioners. As stated above, the District

Court interpreted this judgment to vest Henderson with an entitlement to benefits as opposed with enabling her to apply for benefits.

exception to the ban on retroactive payments.

¶ 25 In light of the fact that no Step 2 process was ongoing until 1993, the District Court in its ruling had to erroneously conclude that the Step 1 certification petition before the Department of Labor was in fact and in law also a Step 2 application process. Clearly, this conclusion is factually and legally erroneous. Moreover, the Court of International Trade merely directed that a favorable certification be entered, that is, Henderson and her co-workers of the Company adversely effected were eligible to apply for Trade Act assistance (Step 1.)

### B. *Outright Grant of Assistance by Court of International Trade*

¶ 26 The District Court erred by ruling that the decision of the Court of International Trade was a decision which granted assistance so that the Commission's action was unnecessary for Henderson to receive Trade Act assistance. To begin, the petition which led to the review by the Court of International Trade was a petition to determine the plaintiff's eligibility and not an application for benefits. As discussed above, these are distinct matters governed by separate statutory and regulatory provisions, i.e., Steps 1 and 2 set out above.

¶ 27 Second, the Court of International Trade's Opinion and Order clearly specify that the ruling is one reversing Labor's denial of eligibility and further directing that the employees be certified as eligible to apply for benefits. Thus, the Court ruled that the jobs were adversely affected by imports in a manner to qualify under the Trade Act for eligibility to apply for benefits.

### IV. *Conclusion*

¶ 28 The District Court erroneously treated the Step 1 eligibility process, including the appeal, as a Step 2 application process for Trade Act assistance. The Commission's decision which denied Henderson's Trade Act assistance was supported by the evidence and was not contrary to law. Therefore, the District Court's decision reversing the Commission and entering judgment for Henderson must be REVERSED.

¶ 29 REVERSED.

¶ 30 GOODMAN, P.J., and TAYLOR, J., concur.