RCB BANK v. STITT
2022 OK CIV APP 3
Case Number: 117835; Consol w/116548 116551
Decided: 01/05/2021
Mandate Issued: 03/03/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 3, __ P.3d __

 

RCB BANK, an Oklahoma Banking Association, Plaintiff/Appellee,
v.
KENT STITT, an individual; KENT D. STITT, Trustee of the 186th St. Land Trust #3240 under the provisions of a Trust Agreement dated June 29, 2007, Defendant/Appellant,
and
M. KEITH STITT & ASSOCIATES; OKLAHOMA TAX COMMISSION; BOARD OF COUNTY COMMISSIONERS, WASHINGTON COUNTY; and OCCUPANTS, if any, Defendants,

M. KEITH STITT & ASSOCIATES, Plaintiff,
v.
KENT STITT, as Trustee of the 186th St. Land Trust; RCB BANK, and OKLAHOMA TAX COMMISSION, Defendants.

APPEAL FROM THE DISTRICT COURT OF
WASHINGTON COUNTY, OKLAHOMA

HONORABLE RUSSELL C. VACLAW, TRIAL JUDGE

AFFIRMED

Scott P. Kirtley, Robert P. Skeith, RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS, Tulsa, Oklahoma, for Plaintiff/Appellee

John J. Carwile, MCDONALD, MCCANN, METCALF & CARWILE, LLP, Tulsa, Oklahoma, for Defendants/Appellants

JOHN F. FISCHER, JUDGE:

¶1 Kent Stitt (Kent) and Kent D. Stitt as Trustee of the 186th St. Land Trust #3240 (Trust) along with M. Keith Stitt & Associates (Keith), appeal the judgment entered in favor of RCB Bank in this mortgage foreclosure action. In the district court, both the Bank and Keith sued Kent and his Trust to collect unpaid promissory notes and to foreclose mortgages on property located in Washington County, Oklahoma, securing the payment of those notes. The district court granted the Bank's motion for summary judgment and also granted Keith's motion for summary judgment, in part. The parties' appeals have been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2013, ch. 15, app. 1, and stand submitted without appellate briefing. The appeals have been consolidated. The district court's judgment provides that Kent's notes to both plaintiffs were in default and that both plaintiffs were entitled to foreclose their respective mortgages. However, the judgment also provides that the Bank's mortgage lien was superior to Keith's mortgage lien and entitled to be satisfied first from the sale of the mortgaged property. Oklahoma law resolves the priority issue in favor of the Bank because its mortgage lien was recorded before Keith recorded its mortgage lien. Because the Trust agreed that its Washington County property would secure all of Kent's debts when it signed the Bank's mortgage, the Bank is entitled to satisfy its entire judgment from that property. Finally, the Bank is not required to marshal Kent's assets and resort to other property on which it holds a mortgage before resorting to the Washington County property because, as between the Bank and Keith, there is no common debtor sufficient to invoke this equitable doctrine. The district court's judgment is affirmed.

BACKGROUND

¶2 This case involves competing mortgage foreclosure actions involving the same property located in Washington County, Oklahoma, described as the southeast quarter of the southeast quarter of section 32, Township 23 North, Range 13 East, Washington County and "commonly known as 3240 E. 186th St. N., Skiatook, OK 74070." The Trust owned the property and granted both of the competing mortgages.

¶3 The Bank's lending relationship with Kent began on December 1, 2004, when Kent executed Note 8610 in the amount of $70,850. The original of Note 8610 is not in the record. However, Kent admits that he executed Note 8610. Documents in the record show that Note 8610 was renewed on several occasions, the last renewal occurring on November 26, 2013, in the amount of $70,850. A copy of the November 26 renewal of Note 8610 is in the record.

¶4 Also on December 1, 2004, Kent executed a mortgage securing the payment of Note 8610 and providing as collateral Government Lot 1, Section 5, Township 22 North, Range 13 East in Tulsa County, Oklahoma. On January 20, 2010, the parties executed a modification of that mortgage extending the due date to January 20, 2011. 

¶5 On September 15, 2009, Kent executed Note 4997 in favor of the Bank in the amount of $117,000. Kent acknowledged that Note 4997 was secured by three separate mortgages and assignments of rents dated September 15, 2009, on three separate properties located in Tulsa County. Those properties are generally described as the Gillette Avenue, Darlington Avenue and Admiral Court properties.

¶6 Regarding the Bank, the transaction involving the Washington County property appears to have begun on August 28, 2013, when Kent executed promissory Note 1374 in favor of the Bank in the amount of $85,473.59.

¶7 Finally, Kent acting as trustee for the Trust executed a guaranty in favor of the Bank dated November 28, 2013. In that instrument, the Trust guaranteed repayment of Note 1374 and "any and all debts, liabilities and obligations" that Kent owed the Bank "under the Note [1374] and Related Documents."

¶8 Regarding Keith, the transaction involving the Washington County property appears to have begun on March 15, 2013. There is a mortgage dated that date signed by Kent as trustee for the Trust in favor of Keith that states it was acknowledged on March 25, 2013. The mortgage was granted by the Trust to secure a "Revolving line of credit" dated March 15, 2013, in the amount of $125,000. The record also contains a promissory note from the Trust dated April 15, 2013, and payable to Keith. The note is signed by Kent as trustee for the Trust "on this 16th day of March 15, 2013" and was acknowledged on March 15, 2013. Keith recorded its mortgage on the Trust's Washington County property on October 23, 2013.

¶9 It is undisputed that all four of Kent's promissory notes involved in this case are in default. On June 10, 2015, the Bank sued to collect its three notes and to foreclose its mortgage on the Washington County property. On June 16, 2015, Keith filed a petition seeking to collect its note and foreclose its mortgage on the Washington County property. The cases were consolidated and both lenders filed motions for summary judgment. The district court granted the Bank's motion and Keith's motion and entered judgment in favor of each against Kent and the Trust. The judgment in favor of the Bank included all amounts due on Notes 1374, 8610 and 4997. In that judgment, the district court also determined that the Bank's Washington County mortgage had priority over Keith's mortgage and also found that the Bank's entire judgment could be satisfied from the proceeds of the sale of the Washington County property before any proceeds would be distributed to Keith.

¶10 Kent appeals the judgment in favor of the Bank but not the judgment in favor of Keith.

STANDARD OF REVIEW

¶11 The procedure for summary judgment is set forth in 12 O.S.2011 § 2056Id. The de novo standard controls an appellate court's review of the district court's order granting summary judgment. Carmichael v. Beller, 1996 OK 48914 P.2d 1051Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125932 P.2d 1100

¶12 The standard of review for a district court's ruling vacating or refusing to vacate a judgment is abuse of discretion. Wells Fargo Bank, N.A. v. Heath, 2012 OK 54280 P.3d 328Ferguson Enters., Inc. v. H. Webb Enters., Inc., 2000 OK 7813 P.3d 480Patel v. OMH Med. Ctr, Inc., 1999 OK 33987 P.2d 1185

ANALYSIS

¶13 The central issue in this appeal is whether the district court erred when it found that the Bank's Washington County mortgage was superior to Keith's Washington County mortgage and that the Bank was entitled to satisfy the entire amount of its judgment, including amounts due on Notes 8610 and 4997, before any proceeds from the sale of the Washington County property would be distributed to Keith. The determination of that issue requires construction of the Bank's mortgage and the cross-collateralization agreement contained in that mortgage.

I. Undisputed Facts

¶14 The necessary facts have been established in the summary judgment record and are not disputed.

1. On December 1, 2004, Kent executed promissory Note 8610 in favor of the Bank in the amount of $70,850.

2. Also on December 1, 2004, Kent executed a mortgage in favor of the Bank to secure the payment of that note and covering property described as Government Lot 1 of Section 5, Township 22 North, Range 13 East in Tulsa County. The Bank recorded this mortgage on December 22, 2004.

3. On September 15, 2009, Kent executed promissory Note 4997, in favor of the Bank in the amount of $117,000. Note 4997 states that it is secured by three mortgages and assignments of rent on three different properties located in Tulsa County, Oklahoma. The Bank recorded those mortgages on September 23, 2009.

4. On January 20, 2010, Kent executed a modification of the December 1, 2004 mortgage he had executed in favor of the Bank. The Bank recorded this mortgage modification on February 8, 2010.

5. Kent, as trustee for the Trust, executed a mortgage in favor of Keith on March 15, 2013. The mortgage was granted to secure a "Revolving line of credit" also dated March 15, 2013, in the amount of $125,000 and provided the southeast quarter of the southeast quarter of section 32, Township 23 North, Range 13 East, Washington County, Oklahoma as collateral.

6. On April 15, 2013, Kent, as trustee for the Trust, executed a promissory note payable to Keith. The note is signed by Kent "on this 16th day of March 15, 2013" and states that it was acknowledged on March 15, 2013.

7. On August 28, 2013, Kent, as trustee for the Trust, executed a mortgage in favor of the Bank and covering property located in Washington County to secure the payment of Note 1374. The collateral was identified as the southeast quarter of the southeast quarter of section 32, Township 23 North, Range 13 East, Washington County, Oklahoma, "commonly known as 3240 E. 186th St. N. Skiatook, OK 74070".

8. On August 26, 2013, Kent, as trustee for the Trust, executed a guaranty agreement. In that instrument, the Trust guaranteed payment of Note 1374 and "all obligations, debts and liabilities" that Kent owed to the Bank.

9. The Bank recorded its August mortgage with the County Clerk of Washington County on September 9, 2013.

10. Keith recorded its March mortgage on October 23, 2013.

11. On November 26, 2013, Kent executed another copy of promissory note 1374 in favor of the Bank in the amount of $85,473.59. Note 1374 states that it is secured by a mortgage to the Bank and an assignment of rents on real property located in Washington County, "commonly known as 3240 E. 186th St. N. Skiatook, OK 74070."

12. A modification of the Bank's August mortgage was also executed by Kent, as trustee for the Trust, on November 26, 2013. The modification extended the due date of the final payment due pursuant to the mortgage for one year, to October 25, 2014. The Bank recorded the mortgage modification with the County Clerk of Washington County on December 13, 2013.

13. On November 26, 2013, Kent also executed a renewal of Note 8610. Kent acknowledged that the renewal was secured by a mortgage in favor of the Bank covering real property located at "Unassigned Land," in Skiatook, Tulsa County, Oklahoma, and a mortgage dated November 26, 2013, also covering real property located at "Unassigned Land," in Skiatook, Tulsa County, Oklahoma.

14. All of Kent's promissory notes held by the Bank and Keith are in default.

15. When Kent defaulted on Notes 1374, 8610 and 4997, the Bank filed its action in Washington County on June 10, 2015, seeking to foreclose its mortgage on the Trust's Washington County property.

16. On June 16, 2015, Keith filed its action seeking to collect its note and foreclose its mortgage on the Trust's Washington County property.

II. The Common Issues

¶15 In response to the Bank's motion for summary judgment, Kent and the Trust did not dispute that Notes 1374, 8610 and 4997 were in default. All defendants argue, however, that the mortgage is ambiguous and, if that ambiguity is construed against the Bank, the mortgage only covers debts of the Trust. Because the Trust does not owe any money to the Bank, they argue that the Bank cannot foreclose its mortgage on the Washington County property. In the alternative, they argue that if the mortgage covers Kent's debts, it only covers the debt owed pursuant to Note 1374 and, therefore, the Bank cannot satisfy its judgment based on Notes 8610 and 4997 from a foreclosure sale of the Washington County property. These arguments are not persuasive.

A. The Bank's Mortgage

¶16 Kent signed Note 8610 on December 1, 2004, in his individual capacity, and Note 8610 identifies Kent D. Stitt as the "Borrower." Kent signed Note 4997 on September 15, 2009, in his individual capacity, and he is identified as the "Borrower" in that instrument as well. Kent signed Note 1374 on November 26, 2013. Note 1374 also identifies Kent D. Stitt as the "Borrower" and is signed by him in his individual capacity.

¶17 The Trust's August mortgage of its Washington County property is the subject of the Bank's foreclosure action. That mortgage is signed by Kent as trustee of the Trust. The mortgage defines Kent D. Stitt as the "Borrower" of the note secured by the mortgage. Kent, as trustee of the Trust, is defined as the "Grantor" of the mortgage. The Trust also represented to the Bank that it was executing the mortgage at Kent's request and that the Trust had the "full power, right, and authority to enter into this mortgage and to hypothecate the Property." There is no dispute that the "Property" subject to the mortgage is the Trust's 186th Street property in Washington County.

¶18 The mortgage provides that, in addition to Note 1374, the Trust granted the mortgage lien to secure all obligations, debts and liabilities of either the Trust or Kent. This provision appears in the cross-collateralization paragraph at the bottom of page one of the mortgage:

CROSS-COLLATERALIZATION. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender . . . as well as all claims by Lender against Borrower or Grantor . . . owed to Lender, whether of like nature to the Note Indebtedness or not, whether arising from a loan or a purchased obligation . . . whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note . . . whether due or not due . . . .

"Indebtedness" is defined as including all principal and interest payable under Note 1374. In addition, the mortgage states: "Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage."

¶19 Clearly, as the defendants essentially concede, the "Indebtedness" secured by the mortgage includes all amounts due pursuant to Note 1374. It is also clear from the plain language of the mortgage that, in addition to the amount due pursuant to Note 1374, the cross-collateralization provision of the mortgage also secures the payment of "all obligations, debts and liabilities, plus interest thereon, of . . . Borrower to Lender." There is no dispute that at the time the mortgage was executed Kent, the "Borrower," owed the Bank the amounts due pursuant to Notes 8610 and 4997.

¶20 Nonetheless, Keith argues that the failure to describe Notes 8610 and 4997 with particularity impermissibly permits the Bank to substitute any debt Kent owed the Bank and collateralize those debts with the Washington County mortgage. Citing Unger v. Shull, 1931 OK 7417 P.2d 881Id. ¶ 7. Kent does not make that argument, and Keith's standing to make the argument is not supported by any authority. It is undisputed that Kent knew he owed the Bank the three debts. Further, if the Trust was uncertain about what "obligations, debts and liabilities" Kent owed the Bank, it could have required more specificity before it agreed to provide its Washington County property as collateral for all of Kent's "obligations, debts and liabilities . . . to Lender." Therefore, assuming the mortgage is not ambiguous, there is simply no legal principle by which the defendants can avoid the Bank's foreclosure of its mortgage on the Trust's Washington County property to satisfy the Bank's judgment.

B. The Defendants' Ambiguity Argument

¶21 The defendants perceive ambiguity in the mortgage primarily from the fact that there are two cross-collateralization clauses in the document. The first one appears on page one of the mortgage. The second appears on page nine. The two clauses are essentially the same in all material respects but one. The first provides that in addition to Note 1374, "this Mortgage secures all obligations, debts and liabilities . . . of either the Grantor or Borrower to Lender." The second provides that in addition to Note 1374, "this Agreement secures all obligations, debts and liabilities . . . of Grantor to Lender." The defendants argue that because Kent, the Borrower, is not mentioned in the second clause, only the debts of the Trust are cross-collateralized. As the Trust points out, it had no loans from the Bank. From this, the defendants argue that the Bank's mortgage secures nothing. A similar argument was made and rejected in Bank of the Wichitas v. Ledford, 2006 OK 73151 P.3d 103Ledford and for additional reasons, we find no support for the defendants' proposed construction of the Bank's mortgage.

¶22 First, there is no language in the second cross-collateralization clause indicating any intent for that clause to supersede and replace the first clause. "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 O.S.2011 § 152

¶23 Second, it is undisputed that in its mortgage to the Bank, the Trust pledged its Washington County property to secure the payment of Kent's Note 1374. In the first cross-collateralization clause, the Trust agreed that in addition to Note 1374 the Trust's Washington County property would also secure the payment of all of Kent's other "obligations, debts and liabilities" to the Bank. The second cross-collateralization clause repeats the Trust's obligation assumed in the first clause. It was not necessary to again reference Kent's obligations, debts and liabilities because in the first cross-collateralization provision, the Trust undertook the obligation to provide the Bank collateral for the payment of all of Kent's debts. That obligation is independent of Kent's previously existing obligations. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S.2011 § 157

¶24 Third, cross-collateralization is the use of collateral for one loan as collateral for another loan. See https://definitions.uslegal.com/c/cross-collateralization. Kent owed the Bank for Note 1374 and the mortgage clearly provides that the Trust's Washington County property was the primary collateral for that loan. If Kent had no other loans from the Bank, a cross-collateralization provision would have been unnecessary. However, at the time the Trust agreed to the cross-collateralization provision, Kent had two other outstanding loans to the Bank, Notes 8610 and 4997. The clear purpose of the cross-collateralization provisions was to use the collateral for Note 1374 as additional collateral for Notes 8610 and 4997. No other construction is permitted because a contract must be interpreted in a reasonable manner that reflects and carries into effect the intention of the parties. 15 O.S.2011 § 159Bank of the Wichitas v. Ledford, 2006 OK 73151 P.3d 103

¶25 The mere fact that the defendants "press for a different construction does not make an agreement ambiguous." Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 563 P.3d 541Fowler v. Lincoln Cty. Conservation Dist., 2000 OK 9615 P.3d 50212 O.S.2011 § 2056See Okla. Oncology & Hematology, P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936

C. The Modification

¶26 Next the defendants argue that if the August mortgage is not ambiguous, the November 2013 Modification of the Bank's mortgage superseded that mortgage and changed the terms of the mortgage, essentially releasing the Bank's lien on the Trust's Washington County property. That argument is refuted by the clear language of the Modification: "Except as expressly modified above, the terms of the principal mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms." The only term of the mortgage "modified above" appears in the paragraph preceding the quoted language and provides: "MODIFICATION. Lender and Grantor modify the Mortgage as follows: That the date of the final payment of said Mortgage, upon which there is at this time a principal balance of $85,473.59, is hereby extended to October 25, 2014."

¶27 The Modification extended the due date of the final payment by one year but did not otherwise change any of the other terms of the August mortgage. The Modification specifically referenced the Bank's mortgage and specifically described the identical property located in Washington County identified as the collateral in the Bank's mortgage. Finally, the Modification provides that by agreeing to a one-year extension of the due date, the Bank was not waiving any right to require "strict performance" of the August mortgage.

¶28 Nonetheless, Kent and the Trust argue that the Modification released the Bank's lien on the Washington County property because only the Trust signed the Modification. It is true that, like the Bank's mortgage, the only signatory to the Modification is Kent D. Stitt, Trustee of the Trust. It is also true that the cross-collateralization clause in the Modification is identical to the second cross-collateralization clause contained in the mortgage; it only expressly mentions the "obligations, debts and liabilities" of the Grantor, i.e., the Trust. For that reason, Kent and the Trust conclude that the Modification only covered any money owed by the Trust to the Bank. Because the Trust did not owe the Bank any money, they argue that the Modification effectively released the Bank's mortgage on the Trust's Washington County property.

¶29 First, that argument fails to recognize that, in the Bank's mortgage, the Trust did not just agree to mortgage its Washington County property to ensure repayment of any money the Trust owed the Bank. The Trust also undertook the "obligation" to provide its Washington County property as collateral for "all obligations, debts and liabilities" of Kent, the "Borrower." Second, the Modification expressly disposes of that argument. The Modification provides: "It is the intention of the [Bank] to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note." It is undisputed that the Trust was a party to the mortgage. It is also undisputed that Kent was the maker of the "Note," i.e., Note 1374. And for the reasons previously discussed, it is clear from the express language of the mortgage that the Trust agreed in that instrument that its mortgage of the Washington County property not only secured the payment of Note 1374 but also secured the payment of Notes 8610 and 4997.

¶30 Finally, the argument is devoid of legal support. "A mortgage secures a debt or obligation, and not the evidence of it, and no change in the form of the evidence, or in the mode or time of payment, can operate to discharge the mortgage." Unger v. Shull, 1931 OK 7417 P.2d 881

III. Keith's Appeal

¶31 Keith does not challenge that part of the district court's judgment against Kent and the Trust for the amounts due pursuant to Notes 1374, 4997 and 8610. Keith's primary argument is that the district court erred in finding that the Bank's mortgage was superior to Keith's mortgage. Keith also argues that the district court erred in permitting the Bank to satisfy that portion of its judgment derived from Notes 4997 and 8610 from the sale of the Washington County property without first resorting to other property specifically securing those notes.

A. The Priority Issue

¶32 The dispositive facts regarding the priority issue are not disputed. The Bank recorded its mortgage on the Washington County property on September 9, 2013. Although dated prior to September 9, 2013, Keith did not record its mortgage until October 23, 2013. No explanation is provided for this delay. "[N]o deed, mortgage, contract, bond, lease, or other instrument relating to real estate . . . shall be valid as against third persons unless acknowledged and recorded as herein provided." 16 O.S.2011 § 15Am. Bank of Okla. v. Wagoner, 2011 OK CIV APP 76259 P.3d 841First Mustang State Bank v. Garland Bloodworth, Inc., 1991 OK 65825 P.2d 25442 O.S.2011 § 15

¶33 Nonetheless, Keith argues that its mortgage is entitled to priority because it was signed and delivered by the Trust prior to the Trust's execution of the Bank's mortgage. To support this argument, Keith cites 16 O.S.2011 § 16subsequent purchasers, mortgagees, encumbrancers or creditors." (emphasis added). Keith argues that because the Bank's mortgage was not recorded until after its mortgage was signed, it could not have provided constructive notice of the Bank's lien. Because it had no notice of the Bank's mortgage, Keith argues that it was a bona fide purchaser for value and that its mortgage is free from any claims by the Bank.

¶34 Section 16 of the recording statutes does not resolve this issue. It is equally true that the Bank's mortgage was signed and delivered before Keith's mortgage was recorded. Consequently, the Bank had no constructive notice of Keith's mortgage. It is also undisputed that the Bank had no actual notice of Keith's mortgage at the time it agreed to loan Kent the proceeds of Note 1374 or accepted the Trust's mortgage of its Washington County property as collateral for that loan. There are simply no facts in this record suggesting that the Bank's reliance on that mortgage was not made in good faith. And, there are no facts showing that the Bank was not entitled to rely on Kent's warranty in that instrument as trustee for the Trust that the Trust held "good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances." According to Keith, that representation was false. But Keith has failed to show that fact was known to the Bank at the time it conducted its 2013 transaction with Kent and the Trust.

¶35 Further, Straub v. Swaim, 1956 OK 97296 P.2d 147

Plaintiff, having already bought and paid for the property, taken possession thereof and received a properly executed conveyance thereof at the time of the recording of defendant's mineral deed was not a subsequent purchaser and such recording therefore afforded no notice to him and did not keep him from being an innocent purchaser for value.

Id. ¶ 9.

¶36 Straub v. Swaim is also distinguishable because possession was a key factor in resolving the priority issue between two title holders. Possession of real property by one holding title provides notice to adverse claimants equal to the notice provided by the recording statutes, 15 O.S.2011 §§ 15See Jones v. Sharp, 1938 OK 34479 P.2d 585In re Estate of Carlson, 2016 OK 6367 P.3d 486

¶37 Consequently, on September 8, 2013, the day before the Bank recorded its mortgage, the Bank and Keith stood in the same position regarding the Trust's Washington County property. Both had given value for the Trust's mortgage of that property. And both had done so without knowledge of the other's transaction. Had the issue of priority been determined at that point, Keith would have prevailed. "Other things being equal, different liens upon the same property have priority according to the time of their creation . . . ." 42 O.S.2011 § 15

¶38 We agree with the "general consensus among Oklahoma practitioners," that by statute and case law Oklahoma has adopted the "race/notice" version of the Recording Act (16 O.S.2011 §§ 15Have Judgment Lien Creditors Become "Bona Fide Purchasers"?, 68 Okla. B.J. 1061, 1061 (1997). Because the Bank recorded its mortgage first, that lien has priority. As the district court correctly found, the Bank's mortgage is entitled to priority over Keith's subsequently recorded mortgage. See First Mustang State Bank v. Garland Bloodworth, Inc., 1991 OK 65825 P.2d 254

B. The Marshaling Issue

¶39 In the alternative, Keith argues that if the Bank's mortgage is a superior lien on the Trust's Washington County property, the Bank is required to marshal available assets, and pursue collection of the amount of its judgment attributed to Notes 8610 and 4997 from mortgages of Kent's Tulsa County property before attempting to collect those amounts from the Washington County property. "Marshaling of assets is an equitable doctrine which is designed to achieve fairness in the distribution of a debtor's assets among secured creditors. The marshaling doctrine is codified in Oklahoma by the provisions of 24 O.S.[2011] § 442 O.S.[2011] § 17Bank of the Wichitas v. Ledford, 2006 OK 73151 P.3d 10324 O.S.2011 § 4

Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons.

Title 42 O.S.2011 § 17

Where one has a lien upon several things, and other persons have subordinate liens upon or interests in, some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, or injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

1. To the things upon which he has an exclusive lien.

. . . .

¶40 Keith argues that marshaling is required because the Bank can collect its judgment from two or more sources, the Washington County property and Kent's Tulsa County property, although it can only resort to the Washington County property for satisfaction of its judgment. Keith's demand for marshaling effectively concedes the priority of the Bank's lien. "[T]he right of marshaling of securities is to be determined by the situation existing when the right of marshaling is sought to be invoked and not by the situation existing when the securities were taken." Vandever Inv. Co., Inc. v. H.E. Leonhardt Lumber, 1972 OK 129503 P.2d 185

¶41 According to the evidence in this record, and without regard to the effect of various cross-collateralization provisions in the mortgages: (1) Kent is the only debtor on the Bank's Notes 1374, 8610 and 4997; (2) the Trust is Keith's only debtor; (3) the Washington County property is owned by the Trust and expressly secures the payment of Note 1374 as well as Kent's promissory note to Keith; (4) the Bank's Note 8610 is secured by a mortgage signed by Kent on Government Lot 1, section 5, Township 22 North, Range 13 East, Tulsa County; and (5) the Bank's Note 4997 is secured by a mortgage on three properties: (a) Unit 10 of Darlington Park Townhomes signed by Kent as Trustee of the Darlington Residential Land Trust; (b) Lot 12, Block 4, Fairmont Addition, Tulsa County signed by Kent as Trustee of the Admiral Court Land Trust; and (c) Lot 13, Block 15, Cherokee Heights Addition, Tulsa County, signed by Kent and Taylor Stitt.

¶42 The Bank argues that marshaling is not required because it does not have "resort to each of several funds." 24 O.S.2011 § 424 O.S.2011 § 442 O.S.2011 § 17

In order for marshaling to apply, three conditions must be met: there must be (a) two or more secured creditors of a common debtor, (b) two or more funds belonging to the common debtor, and (c) a senior creditor who has the right to resort to more than one fund and a junior creditor who has the right to resort to only one.

Bank of the Wichitas v. Ledford, 2006 OK 73151 P.3d 103

¶43 It is clear from this record that the Washington County property is owned by the Trust and not Kent. "Any estate in real property may be acquired and held in the name of an express private trust which is a legal entity." 60 O.S.2011 § 175.6aSpirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45743 P.2d 682

¶44 With respect to the Bank, the Trust is a surety. "A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." 15 O.S.2011 § 371Ledford, 2006 OK 73Id. ¶ 30 (footnote omitted).

¶45 The fundamental problem with Keith's marshaling argument is that it seeks to invoke an equitable solution for what is here essentially a contract issue. The Trust contracted to provide collateral for Kent's debts when it signed the August mortgage with the Bank. Consequently, the issue is what rights did the Trust contract to give the Bank in its August mortgage in the event Kent defaulted on his debts to the Bank. "'The law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of another.'" Rist v. Westhoma Oil Co., 1963 OK 126385 P.2d 791Anthis v. Sullivan Oil & Gas Co., 1921 OK 321203 P. 187

¶46 We recognize that the doctrine of marshaling "was founded in equity and natural justice" and that the doctrine "is not bottomed on the law of contracts or liens." In re Martin, 1994 OK 48875 P.2d 417Mid-Continent Cas. v. First Nat'l Bank & Trust Co., 1975 OK 18531 P.2d 1370

Equity follows the law. Where, as here, the rights of parties are or unsettle those rights. The maxims of equity may be invoked to protect an existing right, but they are unavailable to create a right where none exists.

Mehdipour v. Holland, 2007 OK 69177 P.3d 544

¶47 The district court's judgment is affirmed in its entirety. As a result, we find that the district court did not abuse its discretion in denying Keith's motion to vacate. The order denying that motion is also affirmed.

CONCLUSION

¶48 The district court's judgment provides that Kent's notes to both the Bank and Keith are in default and that both the Bank and Keith are entitled to foreclose their respective mortgages on the Trust's Washington County property. Oklahoma law resolves the priority issue in favor of the Bank because the Bank recorded its mortgage first. Therefore, the Bank's mortgage lien is superior to Keith's mortgage lien and entitled to be satisfied first from the sale of the Trust's Washington County property. Further, the Trust acted as a surety for Kent when it mortgaged its Washington County property to secure Kent's debts to the Bank. According to that contract, the Trust agreed that its Washington County property would secure all of Kent's debts. Consequently, the Bank is entitled satisfy its entire judgment from that property. Finally, the Bank is not required to marshal Kent's assets and resort to other property on which it holds an exclusive mortgage before resorting to the Washington County property because, as between the Bank and Keith, there is no "common debtor" sufficient to invoke this equitable doctrine. The district court's judgment is affirmed.

¶49 AFFIRMED.

BARNES, P. J., and WISEMAN, C.J. (sitting by designation), concur.

FOOTNOTES