**NEIL ACQUISITION, L.L.C., an Oklahoma limited liability company, Appellant,**

v.

**WINGROD INVESTMENT CORPORATION, a Delaware corporation, Appellee.**

No. 86634.

Supreme Court of Oklahoma.

Nov. 19, 1996.

Rehearing Denied Feb. 3, 1997.

OPALA, Justice.

The issues we are asked to decide today are simply put by these two questions: 1) May a trial judge, by *nunc pro tunc* correction of an *earlier unrecorded* deficiency adjudication (that was misfiled in the court clerk's office), reorder judgment lien priorities? and 2) Does a recorded foreclosure decree establish lien priority for a later acquired but unrecorded deficiency judgment? Our answer to both questions is in the negative.

The parties in this case are two companies with competing judgment lien claims sought to be impressed against the same real property. By summary judgment the trial court ruled Wingrod Investment Corporation [Wingrod] held the superior lien because its *foreclosure decree* was recorded in the county clerk's office *before* the foreclosure decree secured by Neil Acquisition, L.L.C. [Neil]. The appellate court affirmed. Both courts appear to have overlooked that Wingrod failed to record its post-sale *deficiency* order, while Neil's like adjudication was placed of record. Neil's contention is that Wingrod's priority status was lost by *its failure to perfect a judgment lien for the adjudged deficiency.* We agree and direct that, on remand, judgment be entered in a manner consistent with today's pronouncement.

**I**

**THE ANATOMY OF LITIGATION**

The FDIC secured in 1989 several foreclosure decrees upon real property owned by C.A. Henderson. Two cases here in contention proceeded to sale. Deficiency determinations followed in each of them for the unsatisfied amount of the adjudicated indebtedness. By assignment, the parties in this suit succeeded to the deficiency interests of the FDIC.

The probative material in the record establishes that the Wingrod *deficiency order,* though pronounced December 7, 1989, *initially was not filed in the court case* nor shown upon its appearance docket. Through a "scrivener's error" the case number next to

Kurt M. Rupert, Melanie J. Jester, Hartzog Conger & Cason, Oklahoma City, for appellant.

James D. Tack, Jr., Robertson & Williams, Oklahoma City, for appellee.

the caption shown on the order identified the wrong case. The misnumbered order was then filed in a case in which Neil was the foreclosing litigant. A *nunc pro tunc* memorial, issued on July 20, 1994, corrected the number for the Wingrod deficiency, expunged the document from the other (wrong) case file, and ordered the court clerk to enter Wingrod's deficiency adjudication in the correctly numbered case "as if it had originally been entered on December 7, 1989," the date the deficiency was initially pronounced. *Neither Wingrod nor its predecessor in interest ever recorded the misfiled deficiency document in the office of the county clerk.*

 The Neil company's predecessor recorded the December 15, 1989 deficiency order in the office of the county clerk no less than *twice* —first on January 10, 1990, and then again on January 17, 1990. Both companies caused writs of *general* execution to issue. Neil brought this suit to establish its judgment lien priority over the competing interest claimed by Wingrod. After initial summary judgment for Neil, the cause came to be reconsidered, and summary judgment then went to Wingrod. The Court of Appeals affirmed the trial court's decision. Certiorari was granted on Neil's petition. Because the trial court's disposition was effected by summary judgment, the issues on review are before us for a *de novo* examination.[1]

---

**1.** Issues of law are reviewable by a *de novo* standard. An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority,* Okl., 859 P.2d 1081, 1083 (1993); *See also Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**2.** The provisions pursuant to which the documents in this case were recorded, 12 O.S.1981 § 706(A), now repealed, required the filing of a judgment's memorial. The latest version of § 706 calls for the filing of a "Statement of Judgment." 12 O.S.1993 Supp. § 706(A).

**3.** The cited Latin phrase stands for the maxim that one who is prior in time has a superior right in law. The provisions of 42 O.S.1991 § 15, which express the same order of priority, are: "Other things being equal, different liens upon the same property have priority according to the time of their creation ..." See in this connection

## II

### A DEFICIENCY ADJUDICATION MUST BE RECORDED IN THE OFFICE OF THE COUNTY CLERK IN ORDER TO ESTABLISH THE JUDGMENT CREDITOR'S LIEN PRIORITY

 To be considered a lien on real property, a judgment must be filed of record in the office of the county clerk.[2] The Court of Appeals rested its holding on Wingrod's act of recording its foreclosure decree before Neil's like decree was placed of record. In this it erred. The dispositive issue here does not deal with the priority of recorded foreclosure decrees, but with the priority of recorded deficiency orders. *Neil recorded its deficiency while Wingrod did not.* Neil's judgment lien is hence superior to that of Wingrod. *Qui prior est tempore potior est jure.*[3]

 A foreclosure decree authorizes merely the sale of the specific land that is mortgaged. It does not represent a recovery of money and hence will not support a general execution.[4] It is the postjudgment deficiency adjudication which determines the amount of deficiency and then allows a general execution to issue against the property owned by the debtor other than that which has been foreclosed.[5]

---

*First Comm. Bank of Blanchard v. Hodges,* Okl., 907 P.2d 1047, 1055 (1995).

**4.** In a foreclosure proceeding, the court must establish the debt due, and the mortgagee must first issue a special execution upon the property under mortgage. If the amount of sale is insufficient to satisfy the judgment, the court must be requested by the mortgagee to enter a deficiency ruling as a postjudgment prerequisite for the issuance of a general execution to enforce the balance due on the original obligation. 12 O.S. 1991 § 686; *Baker v. Martin,* Okl., 538 P.2d 1048, 1050 (1975); *Mehojah v. Moore,* Okl.App., 744 P.2d 222, 223 (1987) [approved for publication by the Supreme Court]; see also *First Comm. Bank of Blanchard v. Hodges, supra* note 3 at 1053–1055.

**5.** *See* supra note 4.

■ Not until there is a judicial determination of a deficiency [6] can a general execution issue. To keep the deficiency alive, execution upon the deficiency must be issued within five years.[7] The deficiency instrument must be recorded if it is to be established as a judgment lien against the real property of the debtor.

■ The statutory scheme prevents the automatic entry of deficiency. That adjudication, which cannot be effected in advance of sale and does not deal with issues on the merits,[8] is part of postjudgment process.[9] A deficiency order does not legally transform itself into a lien until its *sine qua non* prerequisites have been met by: 1) a timely filing of a motion for deficiency judgment ( within 90 days of the sale);[10] 2) the court's ascertainment that a deficiency exists in the 12 O.S.1990 § 686 sense;[11] and 3) the *order*

6. We do not refer to the deficiency determination as a "deficiency judgment." In *FDIC v. Tidwell*, Okl., 820 P.2d 1338, 1343 (1991), the court held there can be but one "judgment" on a single cause of action. In a foreclosure proceeding, the single judgment is the court's determination of the amount due the creditor and its order that the encumbered property be sold to satisfy the mortgage lien. *Mehojah v. Moore*, supra note 4 at 225. Although a "so-called deficiency judgment" may have the effect of a judgment for some purposes, it is *stricto sensu* a postjudgment order determining a deficiency on a judgment previously rendered. *See FDIC v. Tidwell*, supra at 1341; *Willis v. Nowata Land and Cattle Co., Inc.*, Okl., 789 P.2d 1282, 1285 (1990); *Jones v. England*, Okl., 782 P.2d 119, 121 (1989); *Baker v. Martin*, supra, note 4 at 1050.

7. Neil's deficiency order was recorded in the county clerk's office on January 10, 1990, and again on January 17, 1990. Neil's execution on its deficiency was recorded in the county clerk's office on July 14, 1992, which was done within the statutory 5–year dormancy period. Wingrod's deficiency adjudication, though originally misfiled, has been on file in the court clerk's office since July 20, 1994, but was never recorded in the office of the county clerk. Wingrod's first execution was issued August 2, 1994.

The terms of 12 O.S.1991 § 735, the so-called "dormancy statute", provide:

If execution is not issued and filed as provided in Section 759 of this title or a garnishment summons is not issued by the court clerk within five (5) years after the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five (5) years has intervened between the date that the last execution on such judgment was filed or the date that the last garnishment summons was issued as provided by Section 759 of this title, and the date that writ of execution was filed or a garnishment summons was issued as also provided in Section 759 of this title, such judgment shall become unenforceable and of no effect, and shall cease to operate as a lien on the real estate of the judgment debtor. Provided, that this section shall not apply to judgments against municipalities.

8. *See Roark v. Shelter Mutual Ins. Co.*, Okl., 731 P.2d 389 (1986). The word "merits" has a well-defined meaning in the law. It signifies the real or substantial grounds of action or of defense. Practice, procedure, and evidence are not embraced within the term. These are matters "dehors the merits." *See also Tidmore v. Fullman*, Okl., 646 P.2d 1278, 1283 (1982); *Flick v. Crouch*, Okl., 434 P.2d 256, 261 (1967); but cf. *Kimery v. Public Service Company of Oklahoma*, Okl., 562 P.2d 858 (1977).

9. *Founders Bank & Trust v. Upsher*, Okl., 830 P.2d 1355, 1360 (1992); *FDIC v. Tidwell*, Okl., 820 P.2d 1338, 1341 (1991).

10. The U.S. Court of Appeals for the Tenth Circuit refers to the 90–day time bar in 12 O.S.1991 § 686 as an "extinguishment statute" rather than a "statute of limitations." *See International Paper Company v. Whitson*, 10th Cir., 595 F.2d 559, 562 (1979); *Ingerton v. First National Bank & Trust Co. of Tulsa*, 10th Cir., 291 F.2d 662 (1961) later appeal at 303 F.2d 439 (1961). We prefer to view the § 686 bar as a *condition upon the exercise of a right*. *United States ex rel. Farmers Home Administration v. Hobbs*, Okl., 921 P.2d 338, 344 (1996) (Opala, J., concurring); *Matter of Estate of Speake*, Okl., 743 P.2d 648, 652 (1987). Unless deficiency is timely sought the mortgagee's debt is deemed satisfied, through the use of legal fiction, by the proceeds from the sale of the specific mortgaged property. Our anti-deficiency statute, 12 O.S.1991 § 686, like that of the State of New York, goes farther than the statutory requirements of other states, some of which effect only a restriction upon the time period during which the recovery of a deficiency may be sought. *See* discussion in *Riverside National Bank v. Manolakis*, Okl., 613 P.2d 438 (1980).

11. The provisions of 12 O.S.1991 § 686, in pertinent part, provide:

"No real estate shall be sold for the payment of any money or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale ... No judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any

(memorial) is *entered and recorded.* If the deficiency's entry were automatic—in the sense that it could be effected *ex lege* and without judicial intervention—there would no doubt be merit to the argument that the lien of a post-foreclosure monetary deficiency recovery should be allowed to attach at the time the foreclosure decree is recorded (after its entry upon the court clerk's record). *At common law, the deficiency was automatic and called for no judicial intervention.*[12] Since § 686 mandates a hearing and a determination of deficiency in accordance with the statutory formula, it cannot be said that a foreclosure decree alone, once recorded, may serve to establish the priority of a § 706 lien whose underlying amount of obligation is not yet in legal existence.

## III

### NEIL'S KNOWLEDGE OF WINGROD'S *UNRECORDED* DEFICIENCY ORDER DOES NOT ADVANCE WINGROD'S PRIORITY STATUS

■■■ Wingrod's argument that its priority should be advanced because Neil knew or should have known of Wingrod's deficiency order (since the instrument adjudicating

its amount was erroneously filed in the Neil case) is without merit. An unrecorded deficiency ascertainment did not place Wingrod in the protected class of a judgment lienholder.[13] Because Wingrod's unrecorded deficiency never acquired the attribute of a lien, Neil's priority cannot be subordinated by mere knowledge of Wingrod's unrecorded deficiency order. Courts are powerless to advance an *unperfected* judgment lien to a higher priority than that held by a perfected judgment lien. Such action would impermissibly disturb the law's regime that is made dependent on the order of time a judgment is recorded rather than on the lienor's notice of outstanding encumbrances.

## IV

### AN ORDER *NUNC PRO TUNC* CANNOT OPERATE RETROSPECTIVELY TO PERFECT A JUDGMENT LIEN OR TO AFFECT A JUDGMENT LIEN'S PRIORITY

■■■ Neil's argument that Wingrod's foreclosure decree became dormant because over five years had elapsed before execution was issued confuses the lien priority issue with dormancy statutes.[14] We reject the no-

event within ninety (90) days after the date of the sale, the party to whom such residue may be owing may make a motion in the action for leave to enter a deficiency judgment ... If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist."
*See Riverside National Bank v. Manolakis, supra* note 10.

12. *See* Nelson & Whitman, Real Estate Finance Law, Third Ed., § 8.1, A. Regulation of Deficiency Judgments (1994), where the authors state:
"Where foreclosure is by sale under judicial decree in a court action, *the usual method in America and the one under chief consideration here, the amount realized on sale is often an automatic determination of the amount to be applied upon the debt, and mortgage creditor is entitled to recover the balance.*" [Footnotes omitted.][Emphasis ours.]
Our current statutory scheme in § 686, which requires judicial determination of a deficiency, is in accord with the majority of states. The modern trend is to determine the "fair value" of the property in computing the deficiency rather than to follow the common law. The latter measures

the deficiency as the difference between the foreclosure price and the mortgage obligation. See also Restatement of Law of Property (Mortgages) Preliminary Draft No. 5, § 8.4, pg. 111 (June 8, 1995).

13. Neil's priority is not defeated by its failure to issue execution within one year, as required by the provisions of 12 O.S.1991 § 801. The cited statute does not operate to extinguish Neil's lien. *Aetna Finance Company v. Schmitz,* Okl., 849 P.2d 1083 (1993). Moreover, since Wingrod did not record its deficiency adjudication, Wingrod cannot be deemed a competing lienholder. *See* in this connection *Federal Land Bank of Wichita v. Hague,* Okl., 798 P.2d 641, 643 (1990).

14. The order in which executions are issued does not affect lien priority. The provisions of 12 O.S.1991 § 737 are:
"When two or more writs of execution against the same debtor shall be sued out during the term in which judgment was rendered, or within ten (10) days thereafter, and when two or more writs of execution against the same debtor shall be delivered to the officer on the same day, no preference shall be given to either of such writs; but if a sufficient sum of

tion that by a *nunc pro tunc* device the court can reorder lien priorities that are statutorily based on time of recordation [15] The *nunc pro tunc* order which corrected the misfiling of Wingrod's prior deficiency adjudication could not remedy Wingrod's failure to record its deficiency order in the office of the county clerk.

 Liens are created either by *contract* or by the *force of law*.[16] Courts cannot create them.[17] The trial court's power of *nunc pro tunc* correction extends to mistakenly memorialized court records .[18] The device cannot be used to advance the priority of a nonrecorded judgment lien. *Wingrod's claim to priority was relinquished by its failure to transform its deficiency order into a lien by the memorial's recording in the county clerk's office.* Neil's recordation of its deficiency order makes its lien superior to that of Wingrod's unrecorded deficiency order.

## V

### SUMMARY

 We reject today as erroneous the trial court's notion that earlier recordation of a foreclosure decree, when not followed by recordation of the subsequent deficiency order, may establish priority status for a deficiency adjudication's lien. The Neil deficiency order, recorded in the office of the county clerk since 1990, is clearly superior to the never-recorded Wingrod deficiency lien. The five-year dormancy statute—§ 735—which provides for executions to be issued within five years is not implicated in this case.[19] A judgment lienor who relies on recordation of its foreclosure decree but fails later to record its deficiency order is not superior to a competing lienholder who placed its deficiency of record.

**ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF APPEALS' OPINION IS VACATED, THE TRIAL COURT'S DECLARATORY DECREE IS REVERSED, AND THE CAUSE IS REMANDED FOR ENTRY OF JUDGMENT THAT IS CONSISTENT WITH THIS PRONOUNCEMENT.**

WILSON, C.J., and HODGES, LAVENDER, HARGRAVE, and WATT, JJ., concur.

KAUGER, V.C.J., and SIMMS, JJ., concur in result.

SUMMERS, J., disqualified.

money be not made to satisfy all such executions, the amount made shall be distributed to the several creditors in proportion to the amount of their respective demands. In all other cases, the writ of execution first delivered to the officer shall be first satisfied. And it shall be the duty of the officer to endorse on every writ of execution the time when he received the same; but *nothing herein contained shall be so construed as to affect any preferable lien which one or more of the judgments, on which execution issued, may have on the lands of the judgment·debtor.*" [Emphasis added.]

15. Misindexed judgments cannot be considered as properly recorded judgment liens. *Will Rogers Bank and Trust Co. v. First National Bank of Tahlequah,* Okl., 710 P.2d 752 (1985).

16. The terms of 42 O.S.1991 § 6 provide:

A lien is created:
1. By contract of the parties; or,

2. By operation of law.
*See also Young v. J.A. Young Machine & Supply Co.,* 203 Okl. 595, 224 P.2d 971 (1950).

17. *See supra* note 15.

18. *Stork v. Stork,* Okl., 898 P.2d 732, 736, 740 (1995), where it is said:

"Nunc pro tunc relief is limited to supplying inadvertent clerical omission and correcting facial mistakes in recording judicial acts that actually took place. In short, a nunc pro tunc order can and will place of record what was actually decided by the court but was incorrectly recorded ... Nunc pro tunc relief may be available to place of record what was actually adjudicated but incorrectly recorded. The power of a court to correct *its* records to make them speak the truth is not lost by any lapse of time prescribed by statute." [Emphasis added.]

19. *See supra* note 7.