OSCN Found Document:RCB BANK v. STITT, et al.

 

 
 RCB BANK v. STITT, et al.2026 OK 49Case Number: 122112Decided: 06/16/2026IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 49, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

RCB BANK, Plaintiff/Appellee/Respondent,
v.
KENT D. STITT; KENT D. STITT, Trustee of 4652 Darlington Residential Land Trust; KENT D. STITT, Trustee of 186th St. Land Trust #3240; 119 N. GILLETTE LAND TRUST; and M. KEITH STITT & ASSOCIATES, Defendants/Appellants/Petitioners,
and
TAYLOR D. STITT; Darlington Park Townhomes a/k/a DARLINGTON PARK TOWNHOMES NEIGHBORHOOD ASSOCIATION, INC; STATE OF OKLAHOMA ex rel. OKLAHOMA TAX COMMISSION; BOARD OF COMMISSIONERS; TULSA COUNTY TREASURER; and OCCUPANTS OF PREMISES, Defendants.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION I

¶0 Respondent Bank attempted to foreclose mortgages in Tulsa County after the underlying note liability had already been reduced to judgment in an earlier Washington County foreclosure action and after a deficiency judgment had been entered against Petitioner Kent D. Stitt, individually. The Court of Civil Appeals held that the deficiency judgment revived the statute of limitations on the notes under 12 O.S. § 10142 O.S. § 23in personam deficiency judgment, and the Tulsa County mortgage liens were extinguished by operation of law when the limitations period on the notes expired. Judgment in this foreclosure action is therefore entered in favor of Petitioners and against Respondent Bank.

CERTIORARI PREVIOUSL GRANTED; COURT OF CIVIL APPEALS OPINON VACATED; TRIAL COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS

Scott P. Kirtley, RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS, Tulsa, Oklahoma, for Plaintiff/Respondent RCB Bank.

John J. Carwile, Tulsa, Oklahoma, for Defendants/Petitioners Kent D. Stitt; Kent D. Stitt, Trustee of 4652 Darlington Residential Land Trust; Kent D. Stitt, Trustee of 186th St. Land Trust #3240; and 119 N. Gillette Land Trust.

Christopher B. Woods, KINGWOODS, PLLC, Tulsa, Oklahoma, for Defendant/Petitioner, M. Keith Stitt & Associates.

Samantha M. Jones, OKLAHOMA TAX COMMISSION, Oklahoma City, Oklahoma, for Defendant, Oklahoma Tax Commission.

COMBS, J.:

¶1 This case relates to multiple actions filed at different times and in different counties in Oklahoma. This particular appeal concerns the later-filed foreclosure actionand adjudicated the personal liability of three cross-collateralized promissory notes that were secured by mortgages in both Washington and Tulsa Counties. The Washington County action foreclosed on the property in Washington County and resulted in a post-foreclosure deficiency order. Then RCB Bank ("Bank") re-filed their petition for foreclosure in Tulsa County attaching the post-foreclosure deficiency order.

¶2 Defendants M. Keith Stitt & Associates

¶3 The Tulsa County District Court denied Defendants' motion for summary judgment on multiple theories, including that 12 O.S. § 10112 O.S. § 101

I. FACTS AND PROCEDURAL HISTORY

¶4 Over several years, Kent Stitt, individually and in his capacity as trustee to several land trusts, executed three promissory notes in favor of the Bank, coupled with real estate mortgages for properties in Tulsa and Washington Counties. The multiple notes were cross-collateralized, such that the multiple mortgages secured each and every promissory notes. Kent Stitt defaulted on the promissory notes in 2014. In 2015 the Bank filed actions in both Tulsa County

¶5 Proceeding in Washington County, the Bank filed a Motion for Summary Judgment in January 2016 and renewed that Motion in October 2017. On October 23, 2017, the Washington County District Court filed its Final Journal Entry of Judgment ("foreclosure judgment") granting Bank judgment in rem on the Washington County propertyin personam and in rem for the "[Bank] Note Indebtedness" and costs of the action. The "[Bank] Notes Indebtedness" consisted of the aggregate amounts due and payable under the three promissory notes (x1374, x4997, and x8610), plus all interest accrued thereon. The foreclosure judgment additionally granted Bank foreclosure of the Washington County property and issued Special Execution and Order of Sale for the proceeds to satisfy the foreclosure judgment.

¶6 Defendants Kent Stitt and MKSA appealed the foreclosure judgment.RCB Bank v. Stitt, 2022 OK CIV APP 3517 P.3d 986

¶7 While the appeals concerning the foreclosure judgment were ongoing, the sale of the Washington County property proceeded as no supersedeas bond was filed. The Washington County property was sold at auction on December 3, 2018, and confirmed by the court on January 3, 2019. However, the proceeds from the foreclosure sale did not satisfy the foreclosure judgment. As a result, the Bank sought a post-foreclosure deficiency order pursuant to 12 O.S. § 686personally liable for $ 258,231.97 plus interest, $ 41,530.49 in attorney fees, and $ 818.50 in costs. It further states that Bank made a credit bid of $ 300,000, which "leaves a deficiency in the amount of $75,659.31, plus interest." The deficiency judgment also preserves certain rights, providing that "this deficiency judgment shall not preclude any argument, allocation, remedy or relief, which, in the absence of this deficiency judgment, would otherwise be available to M. Keith Stitt & Associates." Finally, the deficiency judgment orders the Oklahoma Employment Securing Commission to produce information about Kent Stitt's employment, so that the Bank could take steps to recover the deficiency from Kent Stitt, individually.

¶8 In 2021, two years after the deficiency judgment in Washington County was filed, the Bank proceeded again in Tulsa County. The Bank filed a new foreclosure action. The 2021 petition prayed for judgment in rem and foreclosure of the Tulsa County properties--that the mortgages be declared "good and valid liens" prior and superior to others' interests.12 O.S. § 101American Investment Co. v. City Savings Bank, 1938 OK 475 P.2d 186

¶9 Defendants appealed, and the matter was assigned to Division I of COCA in Oklahoma City. As this was an accelerated appeal pursuant to Rule 1.36(g) of the Oklahoma Supreme Court Rules, briefs were not automatically permitted but could be ordered. COCA called for appellate briefs on the issue of 12 O.S. § 10112 O.S. § 10142 O.S. § 2312 O.S. § 101

II. STANDARD OF REVIEW

¶10 While summary judgment proceedings require the trial court to examine factual matters, the trial court's role is limited to determining whether any genuine issues of material fact exist and, ultimately, whether a party is entitled to judgment as a matter of law. Carmichael v. Beller, 1996 OK 48914 P.2d 1051id., and we review it de novo to determine whether the trial court properly granted summary judgment, Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City, 2003 OK 6573 P.3d 871de novo review, the court exercises plenary, independent, and nondeferential authority. Id.

III. ISSUES PRESENTED

¶11 As a matter of first impression, COCA applied 12 O.S. § 10112 O.S. § 10112 O.S. § 101

IV. ANALYSIS

A. The Tulsa Foreclosure Action Depends on an Enforceable Underlying Obligation

¶12 In these multiple actions, Bank first elected to foreclose on the Washington County mortgage and seek a personal judgment on the notes. After the sale of the Washington County property and that court's deficiency order, the Bank then sought to foreclose the mortgages on Tulsa County properties.

¶13 When a debtor defaults on a promissory note secured by a mortgage, Oklahoma allows the creditor to seek a judgment on the note and/or to foreclose on the real property. See Coakley v. Phelan, 1935 OK 91866 P.2d 19Hub Partners XXVI, Ltd. v. Barnett, 2019 OK 69453 P.3d 489Id. While it is true that "an action to foreclose a mortgage may be maintained without seeking a personal judgment[,]" Cahill v. Kilgore, 1960 OK 88350 P.2d 92812 O.S. § 686

¶14 Historically, under original equity practice, an action to foreclose a mortgage was strictly in rem and the court had no jurisdiction to render a personal judgment against the defendant. Bartlett Mortg. Co v. Morrison, 1938 OK 42781 P.2d 318Id. Since then, legislatures have enacted statutes, like 12 O.S. § 686Id. Now, "once our trial courts are vested with jurisdiction in a foreclosure action, they render judgments for the debt once and for all . . . ." Id. ¶ 10, 81 P.2d at 320.

¶15 Foreclosure proceedings and deficiency judgments are governed by 12 O.S. § 686See Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Serv., Inc., 2009 OK 77224 P.3d 685

In actions to enforce a mortgage, . . . a personal judgment or judgment or judgments shall be rendered for the amount or amounts due . . . and for sale of the property charged and the application of the proceeds; . . . and the court shall tax the costs, attorney's fees and expenses which may accrue in the action . . . . No real estate shall be sold for the payment of any money or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale. . . . Notwithstanding the above provisions, no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a post-judgment deficiency order upon notice to the party against whom such judgment is sought . . . . Upon such motion the court . . . shall determine . . . the fair and reasonable market value of the mortgaged premises as of the date of sale . . . and shall enter a post-judgment deficiency order. Such post-judgment deficiency order shall be for an amount equal to the sum of the amount owing by the party liable as determined by the order . . . less the market value as determined by the court or the sale price of the property whichever shall be the higher. If no motion for a post-judgment deficiency order shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

12 O.S. § 686See 12 O.S. § 686Hub Partners XXVI, Ltd., 2019 OK 69Id. In support of Bank's position that it has valid mortgage liens in Tulsa County, Bank filed copies of the mortgages, notes, and the "Agreed Deficiency Judgment." In response Defendants argued the foreclosure action is barred by the statute of limitations and, even more, that it is precluded by the doctrine of merger and claim preclusion.

¶16 A mortgage is an accessory obligation that exists solely to secure performance of the underlying debt. 42 O.S. § 21 42 O.S. 23. 

B. The Notes Became Time-Barred Unless Lawfully Extended

¶17 The right to enforce the mortgages is subject to the same limitations period as the right to enforce the promissory notes because Title 42 of the Oklahoma Statutes, which governs liens, links their fate together. A mortgage and note are separate obligations; the note is the evidence of the debt, while the mortgage is the lien securing the payment. But the mortgage (lien) is dependent on the existence of the underlying obligation (note). See 42 O.S. § 23Fourth Nat'l Bank of Tulsa v. Appleby, 1993 OK 153864 P.2d 827ex rel. Land Office State Comm'rs v. Hall, 1942 OK 41128 P.2d 838

¶18 A mortgage is a lien created by the parties by contract. See 42 O.S. § 6. 42 O.S. § 142 O.S.§ 2142 O.S. § 2242 O.S. § 23

¶19 So, in our case, the mortgages "[are] extinguished by the mere lapse of the time within which . . . an action can be brought upon the [debt]." Id.; accord Appleby, 1993 OK 153Rice v. Burgess, 1926 OK 914254 P. 746

¶20 The next question, then, is the applicable limitations period for the principal obligations, the promissory notes. A claim on the notes is governed by a six-year statute of limitations. 12A O.S. § 3-118MTGLQ Inv'rs, L.P. v. Witherspoon, 2023 OK 62532 P.3d 21Id. ¶ 9, 532 P.3d at 24. The statute of limitations for the notes began to run in July 2014 and expired six years later, in July 2020, absent any tolling or other principle allowing extension or revival. The petition to foreclose the Tulsa properties was not filed until 2021, more than seven years after default. 

¶21 The issue then becomes whether anything tolled, revived, or extended the statute of limitations on the notes. Issues of tolling are not preserved for our review, however, because neither party has asked this Court to review the decision of the Court of Civil Appeals regarding tolling, and we do not consider the tolling issues in reaching our conclusion. 

C. 12 Okla. Stat. § 101 Applies Only to Contract-Based Claims

¶22 By 2021, the Tulsa County mortgage liens had expired unless 12 O.S. § 101

¶23 For a "case founded on contract," the statute of limitations period may be "revived" by certain qualifying actions of the debtor. 12 O.S. § 101

In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.

12 O.S. § 101See Keota Mills & Elevator v. Gamble, 2010 OK 12243 P.3d 1156

¶24 Oklahoma has expressly preserved the common law in aid of its statutes. 12 O.S. § 2see Gen. Stat. Kan. ¶ 4101 (1889); O.S.1893, § 3896, section 101 derives from Lord Tenterden's Act 1828, 9 Geo. 4, c. 14, § 1, also known as the Statute of Frauds Amendment Act, which required that any acknowledgment or promise sufficient to revive a debt barred by the statute of limitations be in writing and signed. See Keota Mills & Elevator, 2010 OK 12see also Restatement (Second) of Contracts 5 stat. note (Am. Law Inst. 1981); 4 Williston on Contracts § 8:31 (4th ed. 1990). After Lord Tenterden's Act, a time-barred simple contract claim could be revived only by an acknowledgment or promise in writing signed by the party to be charged. So while the common law allowed revival through implied promises, the statute imposed a formal writing requirement as a condition. Consistent with its Kansas origins, we have recognized three methods by which a contract claim, whether already barred or not, may be removed from the operation of the statute of limitations:

First, by payment of a part of the principal or interest; second, by an acknowledgment in writing of an existing liability, debt, or claim signed by the party to be charged; third, by a promise of payment in writing signed by the party to be charged . . . .

Olatmanns v. Glenn, 1920 OK 133188 P. 886Elder v. Dyer, 26 Kan. 604, 607-08 (1881)).

¶25 Section 101 therefore provides a narrow statutory framework, rooted in assumpsit but constrained by writing requirements, for extending the enforceability of contractual obligations. Critically, at common law, assumpsit did not lie on domestic judgments. The doctrine applied to simple contracts, not obligations of record. See Restatement (Second) of Contracts § 82 and reporter's note (excluding judgments from the category of antecedent contractual indebtedness). While § 101 codifies the assumpsit-based revival doctrine, its conceptual foundation is tied to contractual obligations, not judgments or court orders. COCA's application of section 101 to the deficiency judgment therefore extended the statute beyond both its text and its common-law foundation.

D. The Notes Were Merged into the Foreclosure Judgment and Ceased to Exist as Contractual Obligations

¶26 Once the notes were reduced to judgment, ultimately resulting in the deficiency judgment, the obligation ceased to be "founded on contract." A judgment is "the final determination of the rights of the parties in an action." 12 O.S. § 681

¶27 Coakley v. Phelan, 1935 OK 91866 P.2d 19Id. ¶¶ 5, 10, 66 P.2d at 20. The principal obligation was the note, and the Court held that the mortgage lien was extinguished with the limitations period applicable to that note, even though the judgment on the note had been kept alive by successive executions. Id. ¶ 38, 66 P.2d at 22 ("But it does not follow that because the judgment was kept alive the right of action to foreclose the lien was thereby extended . . . ."). This Court explained that "two distinct causes of action may arise out of a note and a mortgage given to secure same." Id. ¶ 39, 66 P.2d at 22. Once the debt is reduced to judgment, the creditor's personal remedy on the debt and the in rem remedy against the mortgaged property remain distinct, and the continued enforceability of the judgment does not itself preserve the mortgage lien. Id. ¶¶ 38-40, 51-52, 66 P.2d at 22-23.

¶28 That result is consistent with the doctrine of merger. Under the doctrine of merger, "[w]hen a valid and final judgment is rendered in favor of the plaintiff, the plaintiff cannot thereafter maintain an action on the original claim . . . but may be able to maintain an action upon the judgment." Restatement (Second) of Judgments § 18. Merger is a fundamental component of res judicata and reflects the principle that, after judgment, the parties' rights are defined by the judgment, not the underlying agreement. See , e.g., Johnson v. State ex rel. Dep't of Pub. Safety, 2000 OK 72 P.3d 334Randerson v. McKay, 1920 OK 84188 P. 323

¶29 Merger does not mean the debt is annihilated for every purpose. As we explained in Johnson, although the judgment replaces the old debt and extinguishes the underlying cause of action, "the essential nature of the debt remains intact." Johnson, 2000 OK 712 O.S. § 101

¶30 COCA erred in applying 12 O.S. § 10112 O.S. § 681see Bank of Okla., N.A., v. Red Arrow Marina Sales & Serv., 2009 OK 77224 P.3d 685Messenger v. Messenger, 1992 OK 27827 P.2d 865Vaughn v. Osborne, 1924 OK 837229 P. 467

¶31 Although the deficiency judgment arises from an action to foreclose a mortgage and the liquidation of promissory notes, it does not retain the character of the underlying contracts. The Bank's apparent position, that the deficiency judgment either preserves the contractual character of the notes or itself constitutes a contract for purposes of section 101, misapprehends the legal effect of a judgment or court order. Once the notes were reduced to judgment, they merged into the judgment and ceased to exist as independent contractual obligations.

¶32 Once the Bank obtained the deficiency judgment, its rights were no longer "founded on contract," but instead arose solely from the foreclosure judgment. COCA's opinion, that the deficiency judgment constituted a written acknowledgment sufficient to revive the limitations period on the notes, impermissibly collapses the distinction between contract and judgment.

¶33 To be clear, the mortgage liens themselves do not merge into the judgment. See Johnson, 2000 OK 7see also Methvin v. Am. Sav. & Loan Ass'n, 1944 OK 177151 P.2d 370Anderson v. Barr, 1936 OK 47162 P.2d 1242See Latson v. McCollom, 1943 OK 35134 P.2d 130American Inv. Co. v. City Sav. Bank, the Court held that post-maturity interest payments were sufficient to prevent the running of limitations because those payments kept the obligation alive; the Court explained that "[j]ust as long as the debt was alive it supported the mortgage lien." 1938 OK 475 P.2d 186American Investment, the notes here were no longer existing contractual obligations capable of being kept alive by payment or acknowledgment under section 101; they had already merged into the foreclosure judgment. American Investment is therefore inapposite because the underlying debt there remained alive as a contractual obligation, whereas here the note liability had already been reduced to judgment before the alleged acknowledgment on which Bank relies. Where the contractual obligation has been extinguished and replaced by a judgment, any extension of enforceability must arise from the law governing judgments, not from section 101, which applies only to contracts.

¶34 Section 101 operates only where a contract still exists to be revived. Here, the notes were merged into a judgment before the alleged acknowledgment occurred. Because there was no longer a contract capable of revival, § 101 had no application as a matter of law.

E. A Deficiency Judgment Is Not a Contract and Cannot Revive One

¶35 The rule that acknowledgments, promises to pay, or partial payments operate to restart the statute of limitations has been held not to apply to a judgment, on the ground that a judgment is not a contract. See C.C. Marvel, Annotation, Part Payment of Promise to Pay Judgment as Affecting the Running of Statute of Limitations, § 8, 45 A.L.R.2d 967 (1956). The deficiency judgment here is not a contract under Oklahoma law, even if it arose from an "agreed" order. Although the deficiency judgment here was agreed to by the parties, its legal effect arose from the court's entry of judgment, not from a new private agreement. Even when a judgment reflects the parties' agreement, its legal force comes from the court's rendition of judgment, not from private assent alone. A judgment is an obligation imposed by law that supplants the underlying agreement. Unlike a contract, which arises from mutual assent, a judgment derives its force from the authority of the court and constitutes a liability fixed by judicial determination.

¶36 It is true that this Court has recognized that a judgment may constitute a "debt of the highest nature" and may support an action ex contractu for enforcement purposes. Vaughn v. Osborne, 1924 OK 837229 P. 467Vaughn explains only that an action of debt may lie on a judgment because the judgment is treated as a debt of the highest nature; it does not transform the judgment into a contract. The obligation arises by operation of law, not agreement.

¶37 The Kansas Supreme Court in Sharp v. Sharp, 117 P.2d 561(Kan. 1941), confronted the same statutory language and held that a judgment is not a contract for purposes of statutes predicated on contractual obligations Id. at 565 (holding that a domestic judgment is not a "contract" within the meaning of Kansas's statute from which 12 O.S. § 101

¶38 The distinction between treating judgments as contracts for enforcement purposes and not treating them as contracts for substantive purposes is critical in applying 12 O.S. § 10112 O.S. § 101

F. The Bank's Remedies Were Limited to Enforcement of the Judgment

¶39 Once the Bank reduced its claim to judgment, its remedies were limited to those available for enforcement of that judgment. This does not mean that the Bank was left without any remedy. It means only that, after the note liability was reduced to judgment, the Bank's remaining remedies were those afforded judgment creditors, not the commencement of a new foreclosure action on stale mortgage liens. The Bank could no longer proceed as though the underlying notes remained independently enforceable obligations supporting a new foreclosure action. Instead, after judgment, any remaining unpaid amount existed as a judgment debt, and the Bank's rights arose from the judgment itself, not from the extinguished notes.

¶40 In the foreclosure process authorized by 12 O.S. § 686

a foreclosure decree authorizes merely the sale of the specific land that is mortgaged. It does not represent a recovery of money and hence will not support a general execution. It is the postjudgment deficiency adjudication which determines the amount of deficiency and then allows a general execution to issue against the property owned by the debtor other than that which has been foreclosed.

Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125932 P.2d 110042 O.S. § 6Neil Acquisition, ¶ 12, 932 P.2d at 1106. But a money judgment becomes a lien on real property only when the statutory requirements are satisfied. To be considered a lien on real property, a judgment must be filed of record in the office of the county clerk. 12 O.S. § 706Neil Acquisition, ¶ 6, 932 P.2d at 1103. The deficiency judgment likewise "must be recorded if it is to be established as a judgment lien against the real property of the debtor." Id. ¶ 8, 932 P.2d at 1104. Nothing in the deficiency judgment purported to create, re-record, or re-perfect a mortgage lien on the Tulsa County properties; it merely fixed the amount of the unpaid balance remaining after foreclosure of the Washington County property.

¶41 After entry of the deficiency judgment, the Bank was required to pursue remedies afforded judgment creditors. See e.g., 12 O.S. §§ 706See Neil Acquisition, ¶¶ 6-9, 932 P.2d at 1103-05 Likewise, an in personam deficiency adjudication entered in a foreclosure action may become a lien on other real property only when properly filed under section 706, and execution against other property remains subject to the procedures governing judgment enforcement. Mehojah v. Moore, 1987 OK CIV APP 43744 P.2d 222

¶42 The Bank's remedies were limited. Once the Bank obtained its deficiency judgment, its remedies were confined to enforcing that judgment through the statutory collection mechanisms available to judgment creditors.

G. The Tulsa Mortgage Liens Were Extinguished by Operation of Law

¶43 In this case, the Bank's mortgage liens on the Tulsa County properties were extinguished when the limitations period expired on the underlying notes they secured. Under 42 O.S. § 2342 O.S. § 23

V. CONCLUSION

¶44 The Bank was not entitled to foreclose the Tulsa County mortgages as a matter of law. The promissory notes were the principal obligations secured by those mortgages, and the mortgage liens could exist only so long as an action could be brought on those underlying obligations. When the notes were accelerated in July 2014, the six-year limitations period began to run and, absent a lawful extension, expired in July 2020. Under 42 O.S. § 2312 O.S. § 101

¶45 For these reasons, the Tulsa County foreclosure action was untimely, the mortgage liens had already expired, and summary judgment for Bank was error. The matter is reversed and remanded to the Tulsa County District Court to enter judgment in favor of Defendants and against Bank.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS

KUEHN, V.C.J.; WINCHESTER, COMBS, GURICH, DARBY, and JETT, JJ. (by separate writing), concur.

ROWE, C.J.; and KANE, J., (by separate writing), dissent.

EDMONDSON, J., not participating.

FOOTNOTES

Bank previously filed (2015) and dismissed (2016) without prejudice the 2015 foreclosure action in Tulsa. The 2015 Tulsa petition prayed for: (1) in personam judgment against Kent D. Stitt on two promissory notes (x4497 and x 8610) and (2) foreclosure of four mortgages on properties (Darlington, Admiral Court, Gillette, and 186th Street property mortgages).

RCB Bank v. Stitt, No. CJ-2015-2166 (Tulsa Cty. Dist. Ct. filed June 9, 2015). Bank's Tulsa County petition alleged two causes of action: (1) judgment in personam on two promissory notes (x4997 and x8610) against Kent D. Stitt and (2) judgment in rem on mortgages granted to Bank for four properties (Darlington Property, Admiral Court Property, Gillette Property, and 186th Street Property located in Tulsa County.)

RCB Bank v. Stitt, No. CJ-2015-00123 (Wash. Cty. Dist. Ct. filed June 10, 2015). Bank's filed Washington County petition alleged two causes of action: (1) judgment in personam on three promissory notes (x1374, x4997, and x8610) against Kent D. Stitt and (2) judgment in rem on the mortgage covering the 186th St. Property located in Washington County.

See supra note 2.

in personam relief based on the notes, but sought foreclosure of multiple properties that secured the promissory notes already adjudicated. The mortgages of the "Tulsa County properties" at issue were: (1) the September 15, 2009 Darlington property mortgage; (2) the September 15, 2009 Gillette property mortgage; and (3) the December 1, 2004 186th Street property mortgage.

 infra, ¶ 23.

42 O.S. § 21

42 O.S. § 23

42 O.S. § 6

42 O.S. § 1

42 O.S. § 22

12A O.S. § 3-118

MTGLQ Inv'rs L.P., 2023 OK 62

12 O.S. § 101Beyrer v. The Mule, LLC, 2021 OK 45496 P.3d 983See also Okla. Sup. Ct. R. 1.180(b).

The dissent disagrees with our conclusion that issues of tolling are not preserved for this Court's review, questioning why we would require Petitioners to challenge COCA's ruling in their favor or why we would require Bank to file its own cross-petition for certiorari when COCA had affirmed summary judgment in its favor.  J. Kane's Dissent ¶¶ 1, 6, 8.  The dissent further argues that de novo review and the language of Rule 1.180(b) of the Oklahoma Supreme Court Rules allow this Court to reexamine all the trial court's legal rulings, including whether tolling applies.  Id. ¶¶ 2, 12-14.  But the dissent ignores the precise language of Rule 1.180(b) and this Court's numerous precedents that curb our ability to consider issues decided by COCA but not presented in a petition or cross-petition for certiorari.  The rule only allows this Court to address properly preserved and briefed issues that COCA did not decide--not issues that COCA did decide, like the tolling issue in this appeal:

(b) Review on Certiorari.

Issues not presented in the petition for certiorari may not be considered by the Supreme Court.  Provided, however, if the Court of Civil Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may . . . address such undecided matters or it may remand the cause to the Court of Civil Appeals to address such issues.

Okla. Sup. Ct. R. 1.180(b) (emphasis added).  This version of Rule 1.180(b) has been in effect since 1993, when its predecessor--Rule 3.15 of the Rules on Practice and Procedure in the Court of Appeals and on Certiorari to That Court, 12 O.S.1991, ch. 15, app. 3 (renumbered 1997 as Okla. Sup. Ct. R. 1.180, 12 O.S.Supp.1997, ch. 15, app.1)--was amended in Hough v. Leonard, 1993 OK 112867 P.2d 438Hough clarifies that the rule was amended to allow this Court to review issues not raised in any petition for certiorari only when such issues had not been previously decided by COCA. Mosier v. Okla. Prop. & Cas. Ins. Guar. Ass'n, 1994 OK 145890 P.2d 878Nichols v. Mid-Continent Pipe Line Co., 1996 OK 118Hough (and Rules 3.14 and 3.14, 12 O.S. Supp. 1992, Ch. 15, App. 3, Rules on Practice and Procedure) teaches that issues not presented in the petition for certiorari may not generally be reviewed unless the Court of Appeals has failed to decide all issues the successful party had argued in that court on appeal. In the latter situation, this court may, sans certiorari petition, either (a) reach for review the undecided questions or (b) remand them to the Court of Appeals for a decision."); May-Li Barki, M.D., Inc. v. Liberty Bank & Tr. Co., 1999 OK 8720 P.3d 135Hough, all of which the dissent ignores. See, e.g., Nichols, 1996 OK 118resolved by the Court of Appeals, but not explicitly pressed for certiorari review, is beyond this court's power to grant."); Truelock v. City of Del City, 1998 OK 64967 P.2d 1183May-Li Barki, M.D., Inc., 1999 OK 87sans counterappeal. Without its own certiorari petition, that party can advance only those arguments which would demonstrate the correctness of COCA's disposition."); Nealis v. Baird, 1999 OK 98996 P.2d 438Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 563 P.3d 541or counter-petition for certiorari stands abandoned." (emphasis added)); Mustain v. Grand River Dam Auth., 2003 OK 4368 P.3d 991Yeatman v. N. Okla. Res. Ctr. of Enid, 2004 OK 2789 P.3d 1095McCathern v. City of Oklahoma City, 2004 OK 6195 P.3d 1090Robey v. Long Beach Mortg. Corp., 2005 OK 64124 P.3d 221see also 5 Harvey D. Ellis Jr. & Clyde A. Muchmore, Oklahoma Appellate Practice § 17:11, at 838 (Okla. Prac. Ser., 2026) ("If the Court of Appeals has decided the issue adversely to a party, the Supreme Court generally will refuse to consider it at the behest of that party to alter the result reached by the Court of Appeals--even if the party prevailed in the Court of Appeals--unless the issue has been included in a petition for certiorari.").

North v. Haning, 1950 OK 280204 Okla. 321229 P.2d 574Anderson and Methvin to the extent those cases found foreclosure judgments were not subject to the dormancy statute. North, 1950 OK 280204 Okla. 321North did not address nor overrule the pronouncement in both Anderson and Methvin that a mortgage lien is not merged into or extinguished by a foreclosure decree or judgment." Hub Partners XXVI, Ltd. v. Barnett, 2019 OK 69453 P.3d 489

 

 

JETT, J., with whom KUEHN, V.C.J, joins, concurring specially:

¶1 I write separately to discuss a mortgagee's right to foreclose when a debt is secured by mortgages on real property in separate counties.

I.

¶2 Consistent with 42 O.S. § 23Coakley v. Phelan, 1935 OK 91866 P.2d 19Monroe v. Bank of Am. Corp., 781 Fed. App'x. 735, 741 (10th Cir. 2019). If a foreclosure action is not initiated within the required time period, the mortgage lien is extinguished. 42 O.S.§§ 5

¶3 Typically, a creditor will assert causes of action for breach of the promissory note and to foreclose its mortgage in the same lawsuit. However, a creditor is not required to foreclose its mortgage in the same action that it reduces a debt to judgment. Obtaining a "judgment on the note without foreclosure of the mortgage does not prevent the holder of the indebtedness secured by the mortgage from thereafter proceeding to foreclose the mortgage lien." Coakley, 1935 OK 918

¶4 If a creditor chooses to foreclose a mortgage in a subsequent lawsuit, the foreclosure action must be initiated within the time period an action on the note could have been brought. 42 O.S. § 2342 O.S. § 23Coakley, 1935 OK 918

¶ 5 In this case, RCB Bank foreclosed its mortgage on the Washington County properties and obtained an in personam deficiency judgment against Defendants for the unpaid portion of the debt evidenced by the promissory notes. Under Coakley, RCB still had an enforceable mortgage on the Tulsa County properties when it obtained a deficiency judgment in Washington County. However, any action to foreclose the mortgage liens needed to be initiated before the limitations period for the original principal obligation--the promissory notes--expired. I agree with the majority that the Tulsa County foreclosure action is barred by the statute of limitations because it was not initiated within six years from the date RCB's cause of action on the promissory notes accrued. See 12A O.S. § 3-118

¶6 RCB argues that the statute of limitations to foreclose the mortgage was extended when counsel for Defendants signed an agreed deficiency judgment in Washington County; this argument, however, is mistaken. Signing an agreed deficiency judgement is not an acknowledgement of debt as contemplated by 12 O.S.§ 101

¶7 Section 101 provides that "[i]n any case founded on contract, when . . . an acknowledgment of an existing liability, debt or claim . . . shall have been made, an action may be brought in such case within the period prescribed for the same, after such . . . acknowledgment . . . ." (emphasis added). According to its text, 12 O.S. § 101

¶8 In this case, the contract-based cause of action was RCB's claim for breach of the promissory note. This claim was reduced to judgment in the Washington County lawsuit, so the contract-based cause of action merged into the judgment. Restatement (Second) of Judgments § 18, cmt. a. "A statute of limitations establishes a time limit for bringing a civil action, based on the date when the pressed claim accrued." Cole v. Silverado Foods, Inc., 2003 OK 8178 P.3d 542Id. § 18 ("When a valid and final personal judgment is rendered in favor of the plaintiff . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof "). By its terms, 12 O.S. § 10112 O.S. § 101

II.

¶9 Now to the main point of this writing, our holding that the statute of limitation ran on RCB Bank's cause of action to foreclose the Tulsa County mortgages does not mean lenders are doomed when they take as security properties located in multiple counties. In this case, RCB had at least two options for foreclosing its mortgage liens on the Tulsa County properties.

¶10 First, it could have foreclosed the Tulsa County properties in the Washington County lawsuit. 12 O.S. § 132

¶11 Second, any time after it secured a deficiency judgment in Washington County and before the statute of limitation on the Tulsa County mortgages expired, RCB could have foreclosed on the property in Tulsa County. As noted, the majority's decision and our precedent confirm that obtaining a "judgment on the note without foreclosure of the mortgage does not prevent the holder of the indebtedness secured by the mortgage from thereafter proceeding to foreclose the mortgage lien." Coakley, 1935 OK 918See 42 O.S. § 23

¶12 What RCB could not do is wait to initiate the Tulsa County foreclosure more than six years after the cause of action on the respective promissory notes accrued. 12A O.S. §3-11842 O.S. § 23

* * *

¶13 I concur as set forth in this opinion.

FOOTNOTES

42 O.S. § 23See Monroe, 781 Fed. App'x at 741. My point is that 12 O.S. § 101prejudgment debt acknowledgment. Counsel's signing of an agreed deficiency judgment--something that should be encouraged when the deficiency amount is not in dispute based on the district court's previous rulings--simply does not fall within the scope of an acknowledgement of debt to which 12 O.S. § 101

 

 

KANE, J., dissenting:

¶1 I disagree with the majority's decision to not review whether the statute of limitations was tolled while the first Tulsa County action was pending. See Maj. Op., ¶ 21, n. 18.

¶2 First, our standard of review is de novo. We should consider all the arguments made in the trial court supporting and opposing summary judgment. Second, neither our case law nor the Oklahoma Supreme Court Rules prohibit the Court from reviewing the tolling issue. Third, it would have been nonsensical for either party to have raised the tolling issue in a petition for certiorari under this procedural posture.

Summary Judgment is Reviewed De Novo

¶3 As the majority correctly states, "the ultimate concern is whether Bank is entitled to judgment as a matter of law--that is, whether Bank is entitled to foreclose on the Tulsa County mortgages." Maj. Op., ¶ 11. Summary judgment is reviewed de novo. See MTGLQ Inv'rs L.P. v. Witherspoon, 2023 OK 62532 P.3d 21See id. (citing Fanning v. Brown, 2004 OK 785 P.3d 841de novo review when testing the legal sufficiency of all evidentiary materials proffered by the parties in their quest for or in their defense against summary relief." Morales v. City of Oklahoma City, 2010 OK 9230 P.3d 869

¶4 The answer to the question whether Bank is entitled to summary judgment hinges on whether the statute of limitations expired prior to Bank filing the second action in Tulsa County. The trial court made two legal rulings related to Kent Stitt's statute of limitations defense: (1) the statute of limitations was tolled while the first Tulsa County action was pending; and (2) the statute of limitations was reset by the Agreed Deficiency Judgment, pursuant to 12 O.S. § 101De novo review of summary judgment includes reexamining all the trial court's legal rulings.

¶5 The Supreme Court's appellate jurisdiction encompasses reviewing summary judgment on certiorari (not just in appeals retained by the Supreme Court). The majority acknowledges the standard of review remains the same when an appeal from an order granting summary judgment is presented to the Supreme Court on certiorari. See Maj. Op, ¶ 10. However, by limiting its review to issues raised in the petition for certiorari, the Majority Opinion diminishes what it means for this Court to exercise de novo review of summary judgment. The reviewing court--whether the Court of Civil Appeals or the Supreme Court--is limited only by the issues presented in the trial court, as reflected in the record. See Frey v. Indep. Fire & Cas. Co., 1985 OK 25698 P.2d 17

¶6 The Supreme Court, in no way, should relinquish its duty to review the merits of an appeal from summary judgment when the cause comes before us on certiorari from a decision of the Court of Civil Appeals. Rather, we should undertake full de novo review of the arguments made for and against summary judgment in the trial court and the trial court's legal rulings, just as COCA did.

Review is Not Prohibited by Case Law or Rule

¶7 Oklahoma Supreme Court Rule 1.180(b) provides, in full:

Issues not presented in the petition for certiorari may not be considered by the Supreme Court. Provided, however, if the Court of Civil Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may--should it vacate the opinion of the Court of Civil Appeals--address such undecided matters or it may remand the cause to the Court of Civil Appeals for that Court to address such issues. The case will then be decided on the reviewable issue or issues presented in the briefs theretofore filed, unless for good cause the filing of additional briefs be then allowed. The Supreme Court may--should it vacate the opinion of the Court of Civil Appeals--address any issue properly raised in the appeal or on certiorari. Hough v. Leonard, 1993 OK 112867 P.2d 438

Okla.Sup.Ct.R. 1.180(b) (emphasis added). The Majority Opinion focuses on Hough v. Leonard, 1993 OK 112867 P.2d 438See Maj. Op., n. 18. I agree with the majority that this is not a situation where a matter was not decided by COCA. COCA clearly decided that the statute of limitations was not tolled. Hough and the first part of Rule 1.180(b) do not instruct the Court on the issue at hand.

¶8 It is the final sentence of Rule 1.180(b) that contemplates the scenario presented here. While I don't know the genesis of this sentence, it is certainly not Hough. Hough does not speak to the final sentence. Notably, neither does the majority. may address any issue properly raised in the appeal. As explained herein, Kent Stitt properly raised the tolling issue in his appeal.

¶9 It is not that the Supreme Court is prohibited from reviewing the tolling issue. The majority simply opts not to review it. Oklahoma Supreme Court Rule 1.180 permits our review of the tolling issue. The first sentence of Rule 1.180(b) doesn't say that issues not presented in the petition for certiorari shall not or will not be considered by the Supreme Court. It says it may not. "Under rules of statutory construction the term 'may' in a statute denotes permissive or discretionary conduct . . . ." BS&B Safety Sys., L.L.C. v. Edgerton, 2023 OK 89

[T]he legislative history of the rule may be urged to reflect that the Court reserved the right to exercise discretion sua sponte in any case to hear an issue not included in the petition for certiorari. In Hough v. Leonard, supra, the Court adopted the following language which it incorporated into its rules: "Issues not presented in the petition for certiorari will not be considered by the Supreme Court." (Emphasis added.) See former 12 O.S. 1991, Ch. 15, App.3, Rule 3.15. When the Court adopted new rules on January 1, 1997, and Rule 3.15 became new Sup.Ct.R. 1.180(b), the Court changed the word "will" to "may," and at the same time added a new last sentence, which states: "The Supreme Court may--should it vacate the opinion of the Court of Civil Appeals--address any issue properly raised in the appeal or on certiorari."

5 Okla. Appellate Practice § 17:11 (2026 ed.) (emphasis in original). 

Nonsensical for Either Party to Seek Certiorari on Tolling

¶10 Kent Stitt lost on his statute of limitations defense at the trial court. As a result, the trial court found Bank was entitled to judgment as a matter of law. Kent Stitt appealed, clearly preserving the tolling issue. Exhibit C attached to his Petition in Error states: "Did the District Court err in its calculations of the statute of limitations, including by holding that [Bank's] filing of its first Tulsa County case operated to toll the running of the statute of limitations with respect to its second Tulsa County case?" He also alleged the trial court erred by applying § 101. Both arguments relate to the dispositive issue on appeal--whether the second Tulsa County action was filed prior to the expiration of the statute of limitations.

¶11 In its Opinion, the Court of Civil Appeals took up Kent Stitt's § 101 argument first. COCA found § 101 renewed the statute of limitations and affirmed the trial court on this ground. COCA went on to fully analyze Kent Stitt's allegation of error based on tolling. COCA agreed with Kent Stitt that the Bank's first Tulsa County action did not toll the statute of limitations; however, COCA found the trial court's error was harmless error, because § 101 renewed the statute of limitations. COCA ruled in favor of Kent Stitt on tolling but, nonetheless, affirmed summary judgment in favor of the Bank based on § 101.

¶12 Then Kent Stitt filed his Petition for Certiorari. He argued COCA erred by holding an Agreed Deficiency Judgment comes within § 101. He did not raise an issue with COCA's conclusion in his favor that the statute of limitations was not tolled. Kent Stitt's tolling argument was successful before COCA. Why would he challenge COCA's ruling on that issue?

¶13 The Majority Opinion relies on Beyrer v. Mule, LLC, 2021 OK 45496 P.3d 983See Maj. Op., n. 18. However, Beyrer leaves open the possibility the Supreme Court will review an issue not raised in a petition for certiorari:

Preserved issues decided by the appellate court and which are later omitted from the petition for certiorari will usually not be considered by this Court during certiorari review.

. . .

If an assigned error is adjudicated by the Court of Civil Appeals and the adjudicated error is not challenged on certiorari, then the portion of the opinion by the Court of Civil Appeals adjudicating that issue will usually become a part of the law of the case combined with the adjudication on certiorari.

Id. ¶¶ 9-10, at 987-988 (emphasis added); see also Maj. Op., n. 18 (not emphasizing "usually").

¶14 Beyrer is factually distinguishable. In Beyrer, the plaintiff/appellant appealed two orders--denial of motion for new trial and an award of costs to the defendant/appellee. See Beyrer, 2021 OK 45Id. The defendant/appellee, who lost on both issues at COCA, filed a petition for certiorari. Id. ¶ 7, at 986. However, defendant/appellee raised only the new trial issue in their petition. Id. ¶¶ 7-8, at 986. As a result, this Court did not consider the costs issue on certiorari review.

¶15 Additionally, Beyrer involved two distinct issues decided by the trial court and adjudicated by COCA. Here, we are concerned with one issue--whether Bank is entitled to summary judgment. To answer that single question, we must review de novo both arguments advanced in the trial court related to the statute of limitations--tolling and § 101. 

¶16 The Majority Opinion criticizes Bank for not filing a "cross" petition for certiorari challenging COCA's ruling that the trial court erred in finding the statute of limitations was tolled. See Maj. Op., n. 18. Why would Bank file its own petition for certiorari? COCA affirmed summary judgment in Bank's favor, giving Bank the result it wanted.

¶17 Determining whether to grant certiorari is entirely separate from the Court's decision on the merits of the appeal. The Court does not consider appellate briefs or review the trial court record when deciding whether to grant cert. See Okla.Sup.Ct.R. 1.179(d). Arguments in the petition for certiorari, answer, and reply shall not go to the merits of the appeal. See id. Rather, the petition for cert should pertain only to the reasons the Supreme Court should grant certiorari. Id.; Okla.Sup.Ct.R. 1.179(a)(2); see also Okla.Sup.Ct.R. 1.178(a) (reasons for certiorari).

¶18 There is no guarantee the non-prevailing party at COCA will seek cert. Under these rules, would Bank's petition for cert read something like this? "The Court should grant certiorari because, if Kent Stitt files a petition for certiorari and the Supreme Court agrees with him that § 101 did not renew the statute of limitations, then COCA, in holding the statute of limitations was not tolled, also decided a question in a way that is inconsistent with this Court's established jurisprudence." There would be little upside to Bank filing a petition for certiorari challenging what COCA determined was a harmless error. Even worse, if Bank filed a petition for cert and Kent Stitt didn't, Bank would have unnecessarily risked the Supreme Court vacating COCA's § 101 ruling in his favor. (And we can see now how that would have turned out for Bank.) I suppose best practice would be for the prevailing party to file such a petition for cert on the last day and then immediately dismiss the petition if the non-prevailing party doesn't file its own petition.

¶19 Requiring Bank, the prevailing party, to file a petition for cert to preserve the tolling issue would be just as nonsensical as requiring Kent Stitt, the non-prevailing, to raise a successful argument in his petition for cert. Here, Kent Stitt tendered reasons for granting cert related to § 101. This Court found these were worthy of certiorari review. Granting certiorari opens the door for the Supreme Court to review the merits of the appeal de novo, just as the Court of Civil Appeals did.

¶20 I would review whether the statute of limitations was tolled while the first Tulsa County action was pending.

¶21 I respectfully dissent.

FOOTNOTES

12 O.S. § 101

May-Li Barki, M.D., Inc. v. Liberty Bank & Tr. Co., 1999 OK 8720 P.3d 135May-Li indicates only issues not affirmatively decided by COCA qualify for the Supreme Court's sua sponte review under Hough. See id. ¶ 7, at 143 (supp. op. on reh'g). Furthermore, May-Li is factually distinguishable. In May-Li, the appellant did not seek certiorari on COCA's dismissal of the supplemental petition in error. Id. ¶¶ 6-9. The matter currently before this Court is about reviewing an argument advanced in the trial court on summary judgment, not an appellate motion decided by COCA.